WAY, Respondent, vs. WAY and another, imp., Appellants.

*December 20, 1886 — January 11, 1887.*

*Divorce: Antenuptial conveyance in fraud of marital rights.*

In an action for a divorce brought by the wife, third persons to whom the husband conveyed land just previous to the marriage and in fraud of the plaintiff's marital rights, and who hold such property in trust for the husband, may be made parties, and the court may adjudge such conveyance void and vest the title to such land in the plaintiff by way of alimony.

APPEAL from the Circuit Court for *Clark* County.

Action for a divorce. Arthur Way was the principal defendant, and his brother and sister, *Seward Way* and *Nettie Way*, were made parties as being fraudulent grantees of his property.

The complaint, after stating a cause of action for a divorce, alleges that at the time of the marriage Arthur Way was the owner of an undivided one-fourth interest, as heir of his deceased father, in certain lands in Clark county, his interest therein being of the value of $1,500; that on the day of the marriage the defendants fraudulently combined to defraud the plaintiff and prevent her from obtaining any interest in the property of her husband, and in pursuance of such purpose Arthur Way conveyed to his said brother and sister all his interest in said lands; that such conveyance was purely voluntary, and that the grantees therein hold the property in trust for Arthur Way, for the fraudu-

lent purpose of preventing the plaintiff from obtaining any-thing therefrom for the support of herself or her child. The prayer of the complaint is for a divorce, and for alimony, and that the conveyance above mentioned be can-celed.

The defendant Arthur Way did not appear or answer the complaint. The other defendants answered, alleging that the conveyance to them was made in good faith in pursu-ance of an agreement made long before the marriage of the plaintiff to Arthur Way, by the terms of which agreement Arthur was to take certain personal property left by his deceased father, and the other defendants were to pay cer-tain debts which Arthur then owed and to support a younger sister, and in consideration thereof Arthur was to convey to these defendants all his interest in the land and the remain-ing personal property of his deceased father; and that the personal property so received by Arthur and the debts so paid for him were equal in value to one fourth of the whole estate left by his deceased father.

The court found the facts to be substantially as alleged in the complaint, and further that the defendant Arthur, at the same time he conveyed the lands in Clark county to the other defendants, also conveyed to them a homestead of 160 acres in Dakota, worth from $1,200 to $1,500, with like intent to defraud the plaintiff and defeat her marital rights. Judgment was entered granting the divorce, adjudging the conveyance of the lands in Clark county to be void, and con-veying to the plaintiff all the interest of her husband in such lands, as a division of his property, and for costs against all the defendants. From so much of the judgment as affected them the defendants *Seward Way* and *Nettie Way* appealed.

For the appellants there was a brief by *B. F. French*, attorney, and *R. J. MacBride*, of counsel, and oral argument by *Mr. MacBride*. They contended, *inter alia*, that under the present laws of this state respecting the rights of mar-

ried women, an antenuptial voluntary conveyance by the husband, made on the eve of marriage, is not void as against the wife's marital rights. *Butler v. Butler*, 21 Kan. 521; 1 Washb. on Real Prop. 174; *Whithed v. Mallory*, 4 Cush. 138; *Blood v. Blood*, 23 Pick. 80; *Richardson v. Scholfield*, 45 Me. 386. At most the court can only adjudge the conveyance void so far as it affects the wife's inchoate right of dower. *Countess of Strathmore v. Bowes*, 1 Vesey, Jr. 22; *S. C.* 1 White & Tudor's Lead. Cas. 269; *Linker v. Smith*, 4 Wash. C. C. 224; *Tucker v. Andrews*, 13 Me. 124; *Logan v. Simmons*, 3 Ired. Eq. 487; *Ramsay v. Joyce*, 1 McMullen Eq. 236; *Butler v. Butler*, 21 Kan. 521; *Hamilton v. Smith*, 57 Iowa, 15; *Jones v. Jones*, 64 Wis. 301; *Youngs v. Carter*, 50 How. Pr. 410; *Pomeroy v. Pomeroy*, 54 id. 228; *Brown v. Bronson*, 35 Mich. 415; *Chandler v. Hollingsworth*, 17 Am. L. Reg. (N. S.), 319.

*James O'Neill* for the respondent, to the point that such a conveyance was a fraud upon the wife, and that the court may cancel the same and either apply the property as alimony or make a division and give the wife her proper share, cited *Jones v. Jones*, 64 Wis. 301; *Youngs v. Carter*, 50 How. Pr. 410; *Petty v. Petty*, 4 B. Mon. 215; *Swaine v. Perine*, 5 John. Ch. 489; *Pomeroy v. Pomeroy*, 54 How. Pr. 228; *Chandler v. Hollingsworth*, 17 Am. L. Reg. (N. S.), 319; *Mills v. Van Voorhies*, 20 N. Y. 420; *Simar v. Canaday*, 53 id. 298; *Donovan v. Donovan*, 20 Wis. 586; 43 id. 197; R. S. sec. 2364; *Damon v. Damon*, 28 Wis. 510; *Gibson v. Gibson*, 46 id. 449.

COLE, C. J. There is no appeal from that part of the judgment which dissolves the marriage existing between the plaintiff and Arthur Way. We may assume that this marriage was valid; and, upon the divorce being granted on plaintiff's application, she would be entitled to such relief in respect to alimony as the court might deem just and

proper. It is not material, so far as the questions before us are concerned, to inquire whether Arthur was induced to enter into this marriage because he had made a promise to do so, or whether it was on account of her condition, which he felt he was responsible for, and feared, as he well might under the circumstances, that he would have trouble with her father if he did not marry her. His real motives for entering into the marriage are not very pertinent to the question as to her rights in his real estate incident to the marriage.

The learned counsel for the appellants insists that Arthur owned no real estate in this state, or but a very little, at least at the time of his marriage. He claims that he had previously conveyed his interest in his father's estate to his brother, *Seward*, and sister, *Nettie*, for a valuable consideration, and that this conveyance is not open to any legal objection. But it is indisputable that that deed was made on the very day of the marriage, and but a few hours before it was consummated. But counsel claims that the evidence shows that it was made in good faith, without any notice on the part of the grantees that Arthur contemplated marrying the plaintiff; also that it was in pursuance of a parol agreement made between the parties in May or June previously. The circuit court, however, found that this conveyance was voluntary, and was executed by Arthur with a fraudulent intent to defraud the plaintiff and to prevent her from obtaining any interest or rights in his property,— to place it in such a condition as to defeat her rights in it after marriage; and that the brother and sister were privy to, and participated in, this fraudulent purpose.

After a careful examination of all the evidence, we are forced to the conclusion that these findings are in accord with the weight of the testimony. We shall state our conclusions upon the evidence without entering into any dis cussion of it. We make this remark, in passing, that while

there is much testimony tending to prove that Arthur's conveyance of his interest in his father's estate was made in good faith for an honest purpose, there is much direct proof as well as many circumstances which tend to impeach it for fraud. Confessedly, he exercised many acts of ownership over property which he claims to have parted with all interest in by this deed. True, he attempts to explain why he did these things; but there is testimony of disinterested persons as to his declarations that he had deeded his property away so that the plaintiff could not get any of it. Indeed, it is difficult to resist the conclusion, upon the whole case, that this was his real purpose in making the conveyance. *Seward* and *Nettie* testified to a state of facts which seem almost incredible, when they say they did not know at the time when the deed was executed that Arthur was in trouble and was going to marry the plaintiff. Besides, Arthur's conduct in respect to his wife, and his treatment of her, were anything but honorable and fair. His pretense that he was forced to marry her is only consistent with the supposition that he was, at least, conscious that he had got her with child. He immediately abandoned her, and has always refused to contribute anything to her support or the support of her child. But we will make no further comments on the evidence.

Assuming, then, that the findings of fact are correct, we come to the questions of law arising upon them. These do not seem difficult of solution. If the conveyance in question was voluntary and fraudulent, and *Seward* and *Nettie* held the property in trust for Arthur, there can be no doubt of the power of the court, in this divorce proceeding, to cancel that deed, and to decree that the interest of Arthur in the property be vested in the plaintiff as alimony out of his estate.

In *Jones v. Jones*, 64 Wis. 301, the wife, after her dower had become absolute by the death of her husband, asserted

and successfully maintained her marital rights in the premises which the husband had conveyed just prior to the marriage in fraud of her rights. That was not as strong a case upon the facts showing the invalidity of the conveyance as the one at bar, which is a case of premeditated fraud. Still that decision rests upon the well-established doctrine in equity that a secret, voluntary conveyance of property by the intended husband, in contemplation of marriage, without the knowledge of his intended wife, is fraudulent and void as against her, being in derogation of her rights and just expectations. It must be conceded that this is the general rule of law, though there are exceptions to it. But we think it would be difficult to find a case where either party to a marriage contract made a voluntary conveyance of his or her entire property without the knowledge of the other, just prior to the marriage, with the fraudulent purpose of defeating the marital rights of such other, where the transaction has been upheld. That is the case before us. Besides, this is a divorce suit, where the court is expressly authorized by statute to award to the wife such alimony out of the husband's estate as it shall deem just and reasonable, or to divide and distribute the estate of the husband, both real and personal, between the parties, and to divest and transfer the title thereof, having due regard to the legal and equitable rights of each party. Sec. 2364, R. S.; *Donovan v. Donovan*, 20 Wis. 586. And it would be a reproach to the court if it would not lay its hands upon property held in trust for the delinquent husband, and apply it as alimony for the support of the wife. This was all the property the husband had within the jurisdiction of the court which it could so apply. The fact that the legal title was vested in *Seward* and *Nettie* made no difference whatever in respect to the power the court had over it.

That principle is settled in *Damon v. Damon*, 28 Wis. 510, and *Gibson v. Gibson*, 46 Wis. 449. These were both cases

where the fraudulent grantee was made a party defendant in the action with the husband, and it was held that this was proper practice to enable the court to finally adjudicate upon and enforce the rights of the wife to alimony out of the husband's estate. In no other way could full justice be done in the case. The learned counsel argues that all the court could do was to adjudge the conveyance fraudulent in so far as it affects the dower rights of the wife. But this is a question of awarding alimony to an innocent wife on granting a divorce on her application; and it cannot be that the court is powerless to reach property held in trust for the husband, and apply it to the support of the wife. This is what was done here, and we think the judgment is right, and must be affirmed.

*By the Court.*— Judgment affirmed.