[No. 12445.    Department Two. — November 9, 1889.]

LIZZIE WADSWORTH, APPELLANT, v. WILLIAM
WADSWORTH ET AL., RESPONDENTS.

DEFAULT — DIVORCE — ANNULMENT OF MARRIAGE. — In an action for di-
vorce or annulment of marriage, the fullest opportunity to be heard
should be accorded to the parties, and the court should be more liberal
in relieving against defaults than in other cases.

ID. — CROSS-COMPLAINT. — There may be a cross-complaint in an action for
divorce or annulment of marriage.

APPEAL from an order of the Superior Court of the
city and county of San Francisco refusing to set aside
a judgment.

The facts are stated in the opinion.

*W. C. & I. G. Burnett,* and *Dorn & Dorn,* for Appel-
lant.

*Tyler & Tyler,* for Respondents.

*George D. Collins,* and *Fisher Ames, amici curiæ.*

HAYNE, C. — This action was brought against William
Wadsworth, Sen., for annulment of marriage, upon the
ground that at the time of the marriage he had a wife
living. William Wadsworth, Jr., was joined as a de-
fendant, upon the alleged ground that the other de-
fendant had transferred to him without consideration
property purchased in part with funds of the plaintiff,
and which would be community property if the mar-
riage had been valid. William Wadsworth, Jr., made
default. William Wadsworth, Sen., filed an answer,
averring in substance the validity of the marriage. He
filed with his answer a cross-complaint for a divorce
from the plaintiff on the ground of desertion. The
plaintiff filed an answer to the cross-complaint, denying
the desertion. By some inadvertence the attorney for
the plaintiff did not appear at the trial, and she was

not represented thereat. The court granted the defendant a divorce upon his cross-complaint. Within six months the plaintiff moved to have the judgment set aside, on the ground of excusable neglect. This motion was denied, and the plaintiff appeals from the order denying the motion. There is no bill of exceptions. But the stipulation made by the parties is, in our opinion, sufficient for the purposes of the appeal. (*Bonds* v. *Hickman*, 29 Cal. 461; *Solomon* v. *Reese*, 34 Cal. 34.)

1. So far as the divorce awarded to the defendant is concerned, the motion should have been granted under the rule laid down in *McBlain* v. *McBlain*, 77 Cal. 509. In that case the court, per Paterson, J., said: "The parties to the action are not the only people interested in the result thereof. The public has an interest in the result of every suit for divorce; the policy and the letter of the law concur in guarding against collusion and fraud; and it should be the aim of the court to afford the fullest possible hearing in such matters." In the present case there seems to have been an honest desire on the part of the plaintiff to present her side of the case; and while in an ordinary action the neglect shown might be sufficient to deprive her of a right to relief, yet in this kind of case a more liberal rule should prevail. And we think that the same reasons require the application of a liberal rule to proceedings for the annulment of marriage, and therefore that the judgment should have been set aside as to the whole case.

It is argued for the plaintiff that the defendant cannot have a cross-complaint in this kind of an action. This question will necessarily arise when the case goes back to the trial court, and should be disposed of. It has long been the practice in this state for the trial courts to entertain cross-complaints in actions for divorce. Doubt was cast upon this practice by what was said in *Haley* v. *Haley*, 74 Cal. 489. The point was not decided by that case, but McKinstry, J., in the course

of the opinion, said: "It may not be improper to remark that it is at least doubtful whether the codes provide for a cross-complaint in actions for divorce," and he went on to explain why it was doubtful. The respect which we have for the opinion of that learned judge has induced us to make a careful examination of the subject.

There can be no doubt that in the English ecclesiastical courts the defendant could have affirmative relief, not only upon a cross-demand, but even upon his answer, if the evidence showed that he was entitled to it. This was held in the case of *Best* v. *Best*, 1 Add. Ecc. 411. That was a suit for divorce *a mensa et thoro*, upon the ground of cruelty. The defendant set up the adultery of the plaintiff. No relief was granted to either party. But upon the authority of Sir George Saville's case, *Dynely* v. *Dynely*, decided in 1732, and *Mathew* v. *Mathew*, decided in 1769, the court laid down the rule above stated, and said: "That a cross-suit or separate citation is *necessary*, however, under such circumstances, has never been asserted, that I am aware of, from that time to the present, and the practice of either, thus held to be optional, appears from that time to have been finally dispensed with."

In *Dysart* v. *Dysart*, 1 Rob. Ecc. 106, in which the husband sued for a restitution of conjugal rights, and the wife sought a divorce on the ground of cruelty, Dr. Lushington said, with reference to the charge of cruelty: "If that charge be proved, it is clear that not only must the earl fail in obtaining the decree he prays for, but that the countess will be entitled to a decree of separation." But upon the evidence he held that the charge was not proved.

In *Clowes* v. *Jones*, 3 Curt. Ecc. 185, it was held that in a suit by a husband for nullity of marriage, it was competent for the wife, without taking out a cross-citation, to sue for a restitution of conjugal rights.

In *Annichini* v. *Annichini*, 2 Curt. Ecc. 210, which

was a suit for restitution of conjugal rights (subsequently turned into a suit for a separation), Dr. Lushington denied the plaintiff's prayer, and granted the defendant's application for a separation.

In reference to this subject, Mr. Poynter, in his treatise on the Doctrine and Practice of Ecclesiastical Courts relative to the Subject of Marriage and Divorce, 2d ed., pp. 241, 242, says: "To bar a suit for the restitution of conjugal rights, acts of cruelty or adultery may be counter-pleaded, as constituting lawful grounds for a separation, and when so pleaded *merely* for the purpose of barring suit, evidence less circumstantial than what is required to warrant a sentence of divorce in an original suit may possibly be held to be sufficient. But if the counter-plea of cruelty or adultery happen to be sufficiently proved, the defendant in the suit for restitution is not only entitled to be dismissed from that complaint, but the suit may in effect change its character at the prayer of the complainant, who becomes entitled to a sentence of divorce as if in a suit prosecuted for that specific object." And the learned author appends to the above text the following note: "Anciently in all matrimonial suits wherein adultery was intended to be offered on behalf of the defendant, a cross-suit, or at least a citation to the plaintiff to answer to that charge, returnable in the original suit, was held to be requisite; but it was solemnly determined by the delegates in Sir George Saville's case that in a suit for the restitution of conjugal rights, adultery may not only be pleaded in bar, but a divorce may be had in consequence of it. (*Best* v. *Best,* 1 Add. Ecc. 412.)"

And Mr. Bishop says, with reference to the practice: "The flexibility of the practice in the ecclesiastical courts has already been mentioned. In it parties were, in effect, both plaintiff and defendant at the same time. So that, for example, one proceeded against for divorce *a mensa et thoro,* or for nullity of the marriage, or for

restitution of conjugal rights, not only could bring forward a complete wrong done by the other party in defense of the suit, but, if he succeeded in his proofs, he could have the proper sentence rendered in his favor as though he was the original plaintiff." (2 Bishop on Marriage and Divorce, 6th ed., p. 316.)

The matter has been regulated in England by statutes, among which may be mentioned 29 & 30 Vict., c. 32, sec. 2. And the subsequent practice has been accordingly. (See, generally, *Blackburne* v. *Blackburne*, L. R. 1 D. & M. 563; *Brown* v. *Brown*, L. R. 3 D. & M. 202; *D.* v. *D.*, L. R. 10 P. D. 75; *Moore* v. *Moore*, L. R. 12 P. D. 193.)

The practice in the English ecclesiastical courts has not been adopted in America to its full extent; that is to say, the defendant cannot have affirmative relief upon his answer alone, unless it be in the states of Georgia and Nebraska. (See *Owen* v. *Owen*, 54 Ga. 526; *Shafer* v. *Shafer*, 10 Neb. 468.) But the practice of giving affirmative relief on a cross-complaint, or, as it is sometimes called, a counterclaim, prevails in many of the states. In some of the states there is express provision of statute to this effect. (See *Stoner* v. *Stoner*, 9 Ind. 505; *Glascock* v. *Glascock*, 94 Ind. 505; *Ficke* v. *Ficke*, 62 Mo. 337; compare *Hoffman* v. *Hoffman*, 43 Mo. 547.) In other states where the practice prevails, we have not been able to ascertain whether there is an express provision of statute or not. (See *Hoff* v. *Hoff*, 48 Mich. 281; *Sterl* v. *Sterl*, 2 Brad. App. 223; *Lee* v. *Lee*, 1 Duvall, 196.) But in New York, where there is only a general statute as to counterclaims, the practice prevails. (See *Campbell* v. *Campbell*, 12 Hun, 636; *Bleck* v. *Bleck*, 27 Hun, 296; *McNamara* v. *McNamara*, 2 Hilt. 548; *Waltermire* v. *Waltermire*, 110 N. Y. 183.) And so in Iowa. (See *Wilson* v. *Wilson*, 40 Iowa, 233.) And the point has been expressly ruled in Oregon. There the general provision is as follows: "The counterclaim of the defendant shall be one upon which a suit might be maintained by the defend-

ant against the plaintiff in the suit; and in addition to the cases specified in the subdivisions of section 72, it is sufficient if it be connected with the subject of the suit." This provision was held sufficient to warrant a cross-demand for divorce, and the court, per Lord, C. J., said: "To compel the defendant to bring a new suit and go over the same evidence, which could be as well given in the existing action, would be vexatious, and, in fact, unnecessary. On the other hand, to allow such an answer, the rights of the parties could be adjusted in one suit, and much inconvenience and delay avoided. It is always desirable that there be as speedy a determination of litigation as is consistent with a proper examination and consideration of the case." (*Dodd* v. *Dodd*, 14 Or. 338.)

With reference to the American practice, Mr. Bishop says: "The practice of bringing a cross-suit by the defendant against the plaintiff to aid the defense and obtain affirmative relief may be resorted to in divorce cases the same as in any other. It is permissible equally whether the proceeding is by bill in equity, by libel corresponding to the ecclesiastical libel, or by a statutory complaint. The subject needs no particular illustration. Even, it has been held, a defendant may maintain his cross-bill for divorce, though he has not the statutory residence in the state necessary in an original complaint." (2 Bishop on Marriage and Divorce, 6th ed., p. 318.)

The prevalence of the practice in other jurisdictions is very persuasive of its convenience and efficiency. And that it is convenient and safe would seem to result from general principles. Why should not all the marital difficulties of a couple be adjusted in a single suit? A suit for divorce under our system has been held to be a suit in equity. (*Lyons* v. *Lyons*, 18 Cal. 448; *Sharon* v. *Sharon*, 67 Cal. 185.) Is there any principle of equity which favors litigation by piecemeal? In the majority of cases, if affirmative relief can be granted to the de-

fendant at all, it can be granted upon the evidence intro-
duced upon the issues raised upon the complaint, or at
all events such evidence is pertinent and material upon
the cross-demand.   In such cases, what useful purpose
would be subserved by compelling the defendant to face
the expense and delay of another suit in which substan-
tially the same evidence is to be introduced?   It has
long been usual in this state to have such relief on
cross-complaint.   And in at least two cases the practice
has been impliedly sanctioned by the supreme court.
(See *Coulthurst* v. *Coulthurst,* 58 Cal. 239; *Bovo* v. *Bovo,*
63 Cal. 77.)   And it is safe to say that the remarks in
*Haley* v. *Haley* took the profession by surprise.

Is the language of the statute broad enough to war-
rant this widely extended and useful practice?   The
provision is as follows:—

"Sec. 442. Whenever the defendant seeks affirmative
relief against any party relating to or depending upon
the contract or transaction upon which the action is
brought, or affecting the property to which the action
relates, he may, in addition to his answer, file at the
same time, or by permission of the court subsequently,
a cross-complaint.   The cross-complaint must be served
upon the parties affected thereby, and such parties may
demur or answer thereto as to the original complaint."

It is said in *Haley* v. *Haley* that "an action for divorce
is not brought on the ' contract ' of marriage, but upon
certain violations of duties or obligations annexed to the
*status* of matrimony."   It is submitted, however, that to
construe the phrase "contract . . . . upon which the
action is brought," either in the strict common-law
sense in which an action is brought " upon " a contract,
or so as to confine its operation to suits affirming the
validity of the contract and seeking to enforce it, would
be to take an extremely narrow view of the provision,
and to materially restrict its operation.   A suit to rescind
a contract, for example, would not be "upon" the con-

tract in the above senses, and yet it cannot be doubted that the defendant in a suit to rescind a contract could maintain a cross-complaint for specific performance of the contract, if the facts of the case entitle him to specific performance. · But a suit to rescind a contract is no more "upon" the contract in the above senses than is a suit for divorce. It may be conceded that the married state is a *status.* But it is a *status* which results from a contract. (Civ. Code, sec. 55.) And when the *status* is dissolved, the contract is certainly not left in force. If not left in force, it must be dissolved by the decree. And if so, the suit is at least in part for the dissolution of a contract. This being so, may not the cross-demand be said to be one "relating to . . . . the contract . . . . upon which the action is brought" in the sense of the statute? In an Iowa case the court held that the relief was within the meaning of the statute of that state in relation to counterclaims, saying: "The plaintiff seeks to annul the marriage contract on account of an alleged violation of it by the defendant. The defendant, upon the other hand, seeks to annul the same contract on account of violations of the same by the plaintiff. The matters *arose out of the contract* set forth in the petition, and are connected with the subject of the action." (*Wilson* v. *Wilson*, 40 Iowa, 233.)

We think, therefore, that upon principle as well as upon authority there may be a cross-complaint in an action for divorce. And the rule seems to us to apply in actions for annulment of marriage.

The demurrer was to the effect that William Wadsworth, Jr., should not have been joined as a party defendant. (Compare *Way* v. *Way*, 67 Wis. 662.) But this question does not arise upon appeal by plaintiff on order refusing to set aside a judgment in favor of the defendant.

We advise that the order appealed from be reversed, and the cause remanded for a new trial upon all the issues.

BELCHER, C. C., and VANCLIEF, C., concurred.

The COURT. — For the reasons given in the foregoing opinion, the order appealed from is reversed, and cause remanded for a new trial upon all the issues.

Hearing in Bank denied.