# DENISE MAHAN BEALL v. GRAFTON A. BEALL.

## No. 1039.

### APPEAL FROM CIRCUIT JUDGE, FIRST CIRCUIT.
### HON. S. B. KEMP, JUDGE.

ARGUED OCTOBER 23, 1917.          DECIDED OCTOBER 30, 1917.

ROBERTSON, C.J., QUARLES, J., AND CIRCUIT JUDGE HEEN IN PLACE OF COKE, J., ABSENT.

JUDGMENT—*divorce—opening default.*

The technical law of default does not apply to an action of divorce and where there has been an *ex parte* hearing and a decree of divorce in favor of the libellant the default should be opened, the decree set aside and the defendant permitted to defend on the showing made in this case as set forth in the opinion, although the showing might not be sufficient in an ordinary action.

SAME—*same—same.*

The libellee in a divorce case was served out of the jurisdiction

of the court; a decree of divorce rendered against him on *ex parte* hearing; a motion to open the default and set aside the decree was promptly made, the motion being supported by affidavit showing that the libellee was anxious to defend and had cabled his attorney to appear for him, but owing to the temporary absence of his attorney libellee was not represented at the hearing; the affidavit also showed that the libellee denied nearly all the allegations of the libel and attempted to explain the others: Held, that the motion should have been sustained and it was an abuse of discretion to deny the same.

### OPINION OF THE COURT BY QUARLES, J.

The libellant, appellee here, filed in the circuit court of the first circuit on November 8, 1916, a libel for divorce from her husband, the libellee, appellant here, upon the sole ground of desertion alleged to have occurred on the 7th day of November, 1914. In said libel it is alleged that the "libellee is without the Territory of Hawaii, the exact whereabouts of which to your libellant is unknown, but that libellant is informed and believes, and upon information and belief avers the fact to be that said libellee is detailed on the U. S. S. 'Yorktown,' cruising near the southern coast of the State of California; that all mail matter for persons so detailed is directed care of and forwarded to the addressee by the postmaster at San Francisco, California, to whom the exact whereabouts of said Yorktown is from time to time communicated." Thereupon the circuit judge made an order directing that copies of the libel, summons and order for service be made upon the libellee by mailing in a registered envelope sealed and properly stamped to the libellee on the U. S. S. Yorktown in care of the postmaster of the city and county of San Francisco, State of California, said registered envelope to contain thereon the words: "Return receipt demanded" "Deliver only to addressee," and the address of the clerk as sender, and said order fixed Thursday, February 13,

1917, at nine o'clock a. m. as the day and hour for hearing. Pursuant to this order copies of the libel, summons and order for service were mailed as directed, and which the libellee received on board the U. S. S. Yorktown December 10, 1916. Thereafter a special appearance was made to this libel by the libellee, who, appearing specially therefor by his attorney C. S. Davis, Esq., filed a plea to the jurisdiction of the circuit judge upon various grounds based upon irregularities in the summons and order for service. Thereafter the libellant filed another libel against the libellee in the same court, alleging the same ground and the additional ground of extreme cruelty committed by certain acts therein alleged, and another order directing that service of the libel and summons thereon be made upon the defendant personally at San Diego, California, by the sheriff of San Diego county or other proper officer, was made by the circuit judge and service so made March 23, 1917. May 11, 1917, was named as the date for the hearing of the last libel. This last libel bears the exact docket number and register page as the former libel. There is nothing in the record showing that the first libel was discontinued, but the fact that it was not discontinued either before or after filing the second libel is inferable from the record before us. May 7, 1917, the libellee wrote to his attorney, C. S. Davis, Esq., and in his letter denied the charge of desertion, denied nearly all of the acts alleged to show cruel treatment by himself of the libellant, and attempted to explain those not denied. If the facts stated in his letter should be established they could be regarded as constituting a defense to the second libel filed against him as well as showing that he was then a United States naval officer on duty at sea and had no control of his movements while at sea. This letter was forwarded to his said attorney by mail but did not reach him until on or about the 22d day of May, 1917. On the 9th day of

May, 1917, the libellee sent to his said attorney at Honolulu a cable asking him to appear and request delay and saying that he had written a complete traverse to the libel, evidently referring to the letter of May 7, before mentioned. This cablegram was received at the office of C. S. Davis, Esq., at Honolulu on the 10th day of May, 1917, but said Davis was then in Hilo, having left for Hilo the day preceding on business. This cable was taken to Hilo by the father of C. S. Davis and delivered to him on May 11, 1917, whereupon he immediately sent a wireless to the attorneys for libellant asking about the libel, but was informed by answer that the same had been heard and a divorce granted to the libellant. On May 11, 1917, the libellant appeared before the proper circuit judge, asked and was granted an order of default against the libellee, whereupon an *ex parte* hearing was had, evidence was heard on behalf of the libellant and a decree there and then entered divorcing the parties and awarding to the libellant the care of the two minor children, allowing the libellant counsel fees in the sum of one hundred dollars, allowing libellant seventy-five dollars per month for the support of her minor children, and fifty dollars per month permanent alimony for herself, payable monthly. May 18, 1917, the libellee by said attorney filed a motion to open the default and set aside the decree of divorce and permit the libellee to defend, stating therein the facts as to sending and receiving the said cablegram, and further showing in said affidavit that said attorney was expecting to receive by mail from the libellee a statement of the facts touching his defense and would file an additional affidavit setting forth the facts relating to such defense. Thereafter and on May 25, 1917, the libellee by his said attorney filed such additional affidavit in which was copied the statements heretofore referred to as made in the letter of

libellee to his said attorney of May 7, 1917. It also appeared in the affidavit of said C. S. Davis that soon after filing the plea to the jurisdiction of the court by reason of irregularities in the summons that issued on the first libel and the order of service thereon he had. a conversation with the senior member of the firm of Thompson, Milverton & Cathcart, who filed the said libel as attorneys for the libellant and that in such conversation said attorney for the libellant told affiant that he desired to take no chances with the aforesaid plea to the jurisdiction and that they (attorneys for libellant) would file or were about to file or had filed the second libel on behalf of the libellant and that he or one of the members of the firm would see that affiant was notified of the date fixed for the hearing on the second libel; that said attorney for libellee relied upon such statement and paid no further attention and made no further endeavor to find out when the second libel. was fixed for hearing and that he had not received any information as to such time of hearing until he received the said cablegram from the libellee. At the hearing of the motion, upon suggestion of the circuit judge, a cablegram was sent to the senior member of the firm of attorneys representing the libellant, then absent from Hawaii, and he answered thereto by cable, saying: "Made no promise Davis to advise hearing second libel Beall case." From an order denying the motion to reopen the case the libellee has appealed.

The general rule is that applications to open defaults are addressed to the sound discretion of the trial court and such discretion will not be disturbed except in case of clear abuse thereof. This is the rule in ordinary actions where the only parties interested are the parties to the litigation. Query: Should the same rule apply to divorce cases?

The granting of divorces is opposed to the interests of

society and is against public policy except when the ground or grounds prescribed by the statute exist and are clearly proven. This policy is found in various portions of our statutes relating to divorce. For instance, our statutes provide (1) that hearings on divorce shall be public; (2) that the libellant must have lived in the Territory for two years next preceding the application; (3) the case shall not be tried until at least thirty days after personal service has been made on the libellee when his place of residence is known; (4) exact legal proof is required upon every point notwithstanding the consent of parties; (5) the admission of the respondent or libellee shall not be competent evidence except to prove the original marriage; and (6) the divorce must be denied when there is collusion between the parties. (R. L. 1915, Secs. 2927, 2928, 2931, 2933.) The last section referred to provides: "If there be any reason to suspect collusion, or that important testimony may be procured which has not been produced, it shall be the duty of the judge to continue the cause from time to time while such reason for suspicion continues, and the attorney general or other prosecuting officer and parties not of record shall be heard, to establish the fact of collusion or of the existence of testimony not produced." Those statutory provisions are here referred to for the purpose of showing that divorce actions are not on the same plane as ordinary civil actions, and as heretofore held by this court (*Mitchell* v. *Mitchell*, 5 Haw. 161) the technical law of default does not apply to an action or suit for divorce. Under this rule and the statutory provisions referred to we think it reasonably follows that the trial judge has not the same discretion in refusing to set aside a default and decree of divorce that he has in ordinary cases and that the showing in a divorce case which would authorize opening the default might not be sufficient in an ordinary case where the public is not

interested. In the case of *Wadsworth* v. *Wadsworth,* 81 Cal. 182, 15 Am. St. Rep. 38, the court reversed the action of the lower court in refusing to set aside a default, although it was admitted that the appellant had been guilty of such negligence as would in an ordinary action have deprived her of the right to such relief. The court there said: "So far as the divorce awarded to the defendant is concerned, the motion should have been granted under the rule laid down in *McBlain* v. *McBlain,* 77 Cal. 509. In that case the court, per Paterson, J., said: 'The parties to the action are not the only people interested in the result thereof; the public has an interest in the result of every suit for divorce; the policy and the letter of the law concur in guarding against collusion and fraud; and it should be the aim of the court to afford the fullest possible hearing in such matters.' In the present case there seems to have been an honest desire on the part of the plaintiff to present her side of the case; and while in an ordinary action the neglect shown might be sufficient to deprive her of a right to relief, yet in this kind of a case a more liberal rule should prevail."

In *Mulkey* v. *Mulkey,* 100 Cal. 91, it is said: "An affidavit of merits on grounds of public policy has no place in a proceeding of this character. (*McBlain* v. *McBlain,* 77 Cal. 507.) The motion should have been heard and determined alone upon the grounds stated in the notice and affidavits. The facts stated in the affidavit of defendant show either collusion between the parties, or that the defendant was grossly misled and deceived by her husband as to the ground of proposed action, he having informed her, as she states, that it would be brought on the ground of desertion. In either case the court should have been prompt to set aside the judgment and allow the defendant to answer, so that the cause might be heard and determined on its merits. The judgment is a harsh

one, and fearful in its consequences. It deprives the defendant, among other things, of children, home, property and character. To justify such a judgment the evidence should always be clear and convincing; and when obtained in an action of this character, under circumstances such as are disclosed by the record in this case, it should, upon a proper application, made by the appellee for that purpose, be vacated without hesitation, and a much slighter showing than the one here made would be amply sufficient for the purpose. The affidavit of the defendant, in so far as it purports to be an affidavit of merits, was, as we have stated, immaterial; but, in this case, although the practice is not to be commended, it serves the purpose of a proposed answer by specifically denying the material allegations of the complaint, thereby showing what the answer would be if permitted to be filed." See also *Locke* v. *Locke,* 18 R. I. 716.

To permit a default to be opened and allow a defense to be interposed which is not meritorious should not be vigorously opposed in divorce cases owing to the effect that divorce has upon the parties and their offspring. *Hamilton* v. *Hamilton,* 51 N. Y. S. 365. In *Bostwick* v. *Bostwick,* 73 Tex. 182, a divorce case was called out of its order, tried and decided. An application to reopen and permit the defendant to defend was denied by the trial court and reversed by the supreme court on the ground that although defendant had not answered she was entitled to defend and it was error to call the case out of its regular order on the docket, the court enunciating the rule that "The law encourages defenses of divorce suits." In *Simpkins* v. *Simpkins,* 14 Mont. 386, suit for divorce was instituted in Montana. The defendant, who lived at La Crosse, Wisconsin, there employed an attorney to represent her. Her Wisconsin attorney secured the services of an attorney in Montana to assist in the defense and the

latter appeared in the action and prepared an answer after which he agreed with plaintiff upon a compromise as to alimony and notified the defendant that if the compromise was not accepted he would withdraw from the case. Defendant sent a telegram to the Montana attorney refusing to accept the compromise and wrote him some letters explaining why she could not accept the compromise and why he was in error as to having authority to make it, but the Montana attorney returned the letters unopened and withdrew from the case, whereupon the defendant's default was entered, an *ex parte* hearing was had and a decree rendered in favor of the plaintiff who forthwith was married to another woman. A motion to open the default and set aside the judgment in the case and permit the defendant to defend was made, the different facts being shown by affidavit wherein the defendant disputed the *bona fides* of the plaintiff's residence in Montana, but the motion was denied and from the order denying defendant's application to open the case the defendant appealed. The appellate court reversed the order refusing to open the case and in the opinion said: "Divorce laws and procedure in some jurisdictions are often a subject of adverse criticism. If such a proceeding as the one before us is allowed to pass with approval or unchallenged such criticism would be wholly just."

It is argued on behalf of the libellant that the libellee was negligent in that he waited from the time that he was served at San Diego, Cal., which was on March 23, 1917, until just before the time fixed for the hearing before notifying his attorney in Honolulu to appear for him. But in considering this question we must keep in mind the facts that libellee was then a naval officer in the service of the United States on duty at sea in time of war, and that he was not in the same position as an ordinary civilian so far as time and opportunity to attend to personal matters

were concerned.    He did take such course as would
notify his attorney under ordinary circumstances of
the time of trial and did request the attorney to appear for
him and procure delay so that he could be present and
defend the libel.   It was not his fault that his attorney
was absent from his place of business and residence and
on another island, nor was it the fault of his attorney.
Libellee may or he may not have had the opportunity of
communicating the facts relative to his defense to his at-
torney prior to the time that he wrote the letter stating
them.   If libellee was negligent in not proceeding to make
his defense prior to trial such negligence is not shown
other than by lapse of time and this is overcome to some
extent by the circumstances and situation of the libellee,
who has shown an intention to defend and present testi-
mony and evidence which were not before the court for the
purpose of defeating the divorce, and we are of the opinion
that he should have been permitted to do so.   If this was
an ordinary action wherein the public is not interested we
probably would hold that the discretion vested in the trial
judge was not abused, but being a divorce case, the public
being interested, and the defendant a naval officer in the
public service on duty at sea in time of war, not free to
leave his post of duty and to come and go at will, we hold
that the trial judge should have opened the default, set
aside the decree, and have permitted the libellee to present
his defense and that it was an abuse of discretion in this
case to have refused to do so.

The order denying to grant the motion to open the
default and set aside the decree is reversed and the cause
remanded for further proceedings consistent with the
views herein expressed.

*J. W. Cathcart* and *C. S. Franklin* (*Thompson & Cath-
cart* and *C. S. Franklin* on the brief) for libellant.

*C. S. Davis* for libellee.