[Civ. No. 10727. First Appellate District, Division Two.—February 9, 1938.]

LAWRENCE BORG, Respondent, v. ELSE BORG, Appellant.

Walter H. Linforth and William M. Cannon for Appellant.

L. S. Hamm and B. E. Kragen for Respondent.

NOURSE, P. J.—Defendant Else Borg appeals from a decree of annulment of her marriage to plaintiff Lawrence Borg.

On September 6, 1923, she married Eugen Marder in Germany. The couple soon separated and later a divorce proceeding was instituted in the courts of Germany. On December 24, 1930, Else Borg, having been informed by letter that her German divorce decree would be entered before that date, married Lawrence Borg at San Jose in this state. On April 25, 1933, she sued Lawrence Borg for divorce on the grounds of extreme cruelty, and on the same date said parties as "husband and wife" executed a property settlement agreement. On April 27, 1933, in said action there was awarded to her an interlocutory decree of divorce, which decree approved the property settlement. No appeal was taken from this interlocutory decree, and no motion made to vacate it under section 473 of the Code of Civil Procedure, and same has long since become final, though a final decree of divorce has not been entered. On February 16, 1934, Else Borg commenced an action in equity against Lawrence for the purpose of setting aside and canceling the property settlement on the grounds that she had been induced to enter into it by reason of the undue influence of Lawrence. This suit is now at issue. On June 19, 1934, Lawrence commenced this proceeding for an annulment of his marriage to Else on the ground that at the date thereof she had a former husband living from whom she had not been divorced. He also sought an injunction restraining Else from proceeding in her equity suit to set aside the property settlement and from applying for a final decree of divorce.

Else answered alleging, among other things, as a separate defense (par. XII of the Answer), the equitable bar of estoppel; that is, that Lawrence, with full knowledge of the situation of her former marriage, insisted that Else marry him on December 24, 1930; that thereafter, learning the actual date of the German decree, he consented to a new

marriage ceremony, but continually postponed it; that, however, he continued marital relations with Else until shortly before she sued him for divorce; that he held her out to the world as his wife; that he averred on income tax returns that such was their status and that his earnings were community property; that thereafter he executed the property settlement agreement as Else's husband; and hence, for all these reasons he should now be estopped to procure an annulment. Else also filed a cross-complaint setting up her interlocutory decree of divorce as *res judicata* and a bar to this action. At the time of trial plaintiff Lawrence made a motion to strike out said paragraph XII of the answer alleging estoppel and the cross-complaint. The motion was granted. Thereafter the cause proceeded to trial. Over objections of defendant Else, there was admitted in evidence what appears to be a duly authenticated copy of the divorce decree rendered by the German court. There was little other evidence. The trial court found the fact to be that on December 24, 1930, when the marriage ceremony was performed between plaintiff and defendant, she was still the wife of Eugen Marder; that by reason of such prior existing marriage plaintiff and defendant were never husband and wife, and defendant *was not entitled to a decree of divorce;* that the marriage entered into between plaintiff and defendant was void and of no effect. Upon these findings and conclusions, judgment of annulment was entered.

On this appeal the appellant attacks the sufficiency of the copies of the judicial record of Germany purporting to show the proceedings leading to the German divorce. She also attacks a ruling of the trial court in striking out her special defenses of equitable estoppel and of the prior adjudication of the issues in the interlocutory decree of divorce.

We confine our decision to the point relating to the effect of this interlocutory decree. ■ An action for divorce under our system is a suit in equity. (9 Cal. Jur. 629; *Wadsworth* v. *Wadsworth*, 81 Cal. 182, 186 [22 Pac. 648, 15 Am. St. Rep. 38].) In so far as the action relates to the marriage relation and the termination of the marriage status, it is a proceeding *in rem*. (9 Cal. Jur. 629; *Estate of Lee*, 200 Cal. 310, 314 [253 Pac. 145]; *Kelsey* v. *Miller*, 203 Cal. 61, 91 [263 Pac. 200]; *Delanoy* v. *Delanoy*, 216 Cal.

27, 34 [13 Pac. (2d) 719, 86 A. L. R. 1321].) Since the purpose of the action is to judicially declare a dissolution of the marital relation (secs. 90 and 91, Civ. Code), a prerequisite of the judgment of dissolution is a finding establishing the matrimonial relation; i. e., the existence of the *res*. (*Estate of Lee, supra.*) Though the authorities are not in full accord as to whether the *res* in such proceedings is the prior validity of the marriage or the subsequent singleness of the parties (*Blumenthal* v. *Blumenthal*, 97 Cal. App. 558, 562 [275 Pac. 987]) it was expressly held in the matter of Lee, *supra*, that the decree established the status of the parties as husband and wife from the date of the marriage, and this rule is universal in subsequent proceedings between the parties to the suit for divorce. The limitations of the rule in relation to third parties are not involved here.

The effect of the interlocutory decree here pleaded is this: it is a final judicial determination of the existence of the matrimonial relation in so far as the rights of these parties are concerned; it is a final judicial determination that, as of the date of its entry, the parties were *entitled* to a dissolution of the status of married persons; it is a final judicial determination of the property rights of the parties and of all other matters not suspended until the entry of the final decree. In so far as this interlocutory decree determines the marital status of the parties, it is a judgment *in rem* immune from collateral attack, except on grounds specified by the code—section 1916, Code of Civil Procedure; *Estate of Lee, supra; Kelsey* v. *Miller, supra.* In so far as the interlocutory judgment decrees a dissolution of the marital status its operation is suspended for a full year thereafter. The right of the prevailing party to have a final decree entered at that time is then dependent upon conditions arising *after* the entry of the interlocutory decree (barring the equitable considerations of fraud or mistake in the procurement of that decree). (*Olson* v. *Superior Court*, 175 Cal. 250, 252 [165 Pac. 706, 1 A. L. R. 1589]; *Gloyd* v. *Superior Court*, 44 Cal. App. 39, 42 [185 Pac. 995]; *Fisher* v. *Superior Court*, 110 Cal. App. 567, 568 [294 Pac. 446].) It is the settled rule of these cases that the interlocutory decree does not sever the marital relations, but that the final judgment alone dissolves the marriage and restores the parties to the status

of single persons. (*Estate of Dargie*, 162 Cal. 51, 53 [121 Pac. 320].)

■ The cases are also in harmony on this point: An attack upon a judgment upon the ground that it was procured by fraud or mistake is a direct attack, but the fraud which may justify relief is a fraud in procuring the judgment. (*Pico* v. *Cohn*, 91 Cal. 129, 133 [25 Pac. 970, 27 Pac. 537, 25 Am. St. Rep. 159, 13 L. R. A. 336] ; *Parsons* v. *Weis*, 144 Cal. 410, 419 [77.Pac. 1007].) The interlocutory decree was not attacked in this proceeding upon any legal ground. It was completely ignored except for the purpose of the prayer for ancillary relief by way of an injunction to restrain the prosecution of the independent suit in equity and the entry of the final decree of divorce. This was a collateral attack against which the interlocutory decree stands as *res judicata*.

■ The question here involved is settled by *Estate of Lee, supra.* That was a contest of a will by the putative daughter of the testator. The contestant was born on July 5, 1895. Her mother and testator were married on May 16, 1895. The testator was a mulatto; the mother was a white person. The parties were divorced on March 26, 1903. Since the daughter was not mentioned in the will, she contested on the ground that, having been born in wedlock, she was presumed to be legitimate. The respondents contended that, since the testator was a mulatto, the marriage was void *ab initio* under the provisions of section 60 of the Civil Code. In sustaining the contestant the Supreme Court said (p. 313) : ''The judgment of divorce was not impeached nor was it sought to be impeached by the respondents on any legal ground. (Sec. 1916, Code Civ. Proc.) In the absence of such impeachment it must be assumed that the court had jurisdiction over the cause and over the parties. (Sec. 1917, Code Civ. Proc.) It must further be assumed that the court found in that action, among other things, that the ceremony in which the plaintiff and defendant participated resulted in their marriage; that they were married persons when the cause was tried; that sufficient grounds for divorce were alleged and proved and that the plaintiff, the decedent herein, was entitled to a judgment dissolving the bonds of matrimony theretofore and since the sixteenth day of May, 1895, existing between the parties.'' Here we do not need to assume that the parties were married persons when the cause for divorce

was tried—the trial court found that to be true. Further on the court said: "The judgment here under consideration was a conclusive determination of the status of the parties to said action as husband and wife from May 16, 1895, to the dissolution of that relation by the judgment of divorce on March 26, 1903. Said judgment was and is binding upon the parties to the present proceeding and constitutes a judicial determination of a state of 'wedlock' existing between the parties to said action when the appellant was born on July 5, 1895."

Respondent dismisses the Lee case with the statement that a final decree of divorce was there involved. But the applicability of the rule of that case cannot be disregarded for that reason. The final decree merely dissolves the marital relation. The interlocutory rests on the findings of fact which are made on the only evidence taken as to the marriage. Here the trial court in the interlocutory decree found the status of the parties to be that of husband and wife, and, whether right or wrong, that decree is a conclusive determination of such status against collateral attack.

Having said that a suit for divorce is a suit in equity, we are met by the well-accepted rule of equity that it frowns upon litigation by piecemeal. (*Wadsworth* v. *Wadsworth*, *supra*.) In the absence of all suggestion of fraud, mistake, or other equitable considerations, we must assume that the divorce proceeding here was instituted in good faith to dissolve the marriage relation and to settle the property rights of the parties. All the interests of the respective parties, as well as those of society in general, could have been adjusted and determined in that proceeding, and hence there is no necessity and no demand for this litigation, the effect of which is merely to place a cloud over the property rights and interests of the parties and to entail further needless litigation.

We conclude, therefore, that the interlocutory decree was a good defense to plaintiff's action and that he should be precluded from again litigating the same issue which was heard and determined in the divorce proceeding.

The judgment is reversed.

Sturtevant, J., and Spence, J., concurred.

A petition by respondent to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on April 8, 1938.