[No. 30510.  Department One.  June 10, 1948.]

JOHN L. ERICKSON, *Appellant*, v. MILDRED G. ERICKSON, *Respondent.*[1]

*C. A. Schneider*, for appellant.

*Wettrick, Flood & O'Brien*, for respondent.

HILL, J.—On June 29, 1939, Mildred G. Erickson was awarded an interlocutory decree of divorce from John L. Erickson, on her cross-complaint, and a final decree was

[1]Reported in 194 P. (2d) 954.

subsequently entered. By the interlocutory decree, she was awarded the custody of their two children, a boy and a girl, and sixty dollars a month for their support until the boy, the older of the two, became twenty-one years of age, and thirty-five dollars a month thereafter until the girl became twenty-one. Fifty shares of Superior Portland Cement Association Class A stock were directed to be and were delivered to Mrs. Erickson, to be held by her as security for the support-money payments. The income from the stock was to be used to pay medical and dental expenses for the children; and, when the girl became twenty-one years of age, the stock was to be divided equally between Mr. and Mrs. Erickson.

Before May 13, 1943, the boy had become of age and the support money for the girl had been reduced to thirty dollars a month. On that date, the interlocutory decree was again modified because the girl, who was then eighteen years of age, had graduated from high school and was earning one hundred twenty-five dollars a month. The pertinent part of the modification decree was as follows:

"Now THEREFORE IT IS HEREBY ORDERED, ADJUDGED and DECREED that the Interlocutory Order and Final Decree and all orders heretofore made and entered with reference to the monthly allowance for the support of said child, which is now $30.00 per month, be and is hereby terminated as and of the 1st day of May, 1943, and that the plaintiff John L. Erickson is relieved and released from making any further payments for the support of said child whatsoever from the 1st day of May, 1943, until further orders from the Court, and in case the said child returns to school, or is not self-supporting, then the defendant upon three days notice to the plaintiff or his attorney may restore the provision for the support of said child in such sum as the Court may then determine for her support while in attendance at school, or is not self-supporting."

The girl quit work and entered the University of Washington that fall and attended the university, with the exception of summer vacation periods, until she became twenty-one years of age on March 20, 1946. Other than twenty dollars sent directly to the girl, apparently as a gift,

Mr. Erickson made no contribution to her support during the period she was attending the university.

On June 21, 1946, Mr. Erickson made a motion

". . . for an Order directing the defendant [respondent] to forthwith deliver to him on behalf of the plaintiff [appellant] one-half of the shares of stock in the Portland Cement Association and to make full accounting for the dividends received, and pay one-half thereof to the plaintiff or be adjudged guilty of contempt of court."

Promptly thereafter, on June 25, 1946, Mrs. Erickson filed a report showing dividends in the amount of $411.25 received from the stock, and medical expenses amounting to $266.92, which left a balance of $144.33. She alleged that necessary expenditures for the education of the girl had amounted to $1,848.80 and asked $1,020 by way of contribution to her support, less the sum of $144.30, or $875.70.

With equal promptness, Mr. Erickson filed his "Answer to the Alleged Report" on July 1, 1946, claiming an error in the accounting and, as a reply to her claim of contribution, quoting the portion of the order of May 13, 1943, heretofore set forth herein. He alleged

". . . that no further orders have ever been entered herein and that there is no legal obligation for the plaintiff to pay for the support of said child."

The hearing on the issues thus raised was set for September 3, 1946. On August 5th, Mrs. Erickson filed a petition to modify the order of May 13, 1943, and to award her fifty dollars a month for the period the girl had attended the university during her minority. This was served by mailing a copy to Mr. Erickson's attorney. Mr. Erickson appeared specially and moved that the petition be dismissed for want of proper service. This motion was denied. Still insisting on his special appearance, Mr. Erickson requested a bill of particulars and demurred to the petition. The request for a bill of particulars was granted, and the demurrer was overruled. Still insisting on his special appearance, Mr. Erickson answered the petition, urging by way of affirmative defense that, the girl having become of

age, the court was without jurisdiction to enter any order relative to her support.

With the record in this state, the matter was heard in February, 1947.

In the meantime, additional income had been received from the Superior Portland Cement stock (or the stock and debentures which had been received in lieu of that stock as the result of a corporate reorganization), and it is conceded that Mrs. Erickson had $294.33 in her possession over and above the amount of any medical or dental bills for the girl incurred prior to March 20, 1946; and, as the stock was to have been divided equally, it is conceded that Mr. Erickson was entitled to one half thereof, or $147.16.

The evidence established that the cost of maintaining the girl in the university was fifty dollars a month, exclusive of sorority expenses and other luxury items. The trial court concluded that Mr. Erickson should, by way of contribution to her support, pay one half of that amount, or twenty-five dollars a month, for the thirty months which the trial court found the girl had attended the university before she became twenty-one years of age. This amounted to seven hundred fifty dollars, from which was deducted the $147.16 concededly due Mr. Erickson, and Mrs. Erickson was given a judgment for $602.84.

Mr. Erickson concedes the accuracy of the accounting and that there is the sum of $147.16 due him, but he appeals from the rest of the judgment.

He argues at length the sufficiency of the service of the petition for modification and the authority of the court to consider the same. Conceding, without deciding, that the court cannot modify an interlocutory decree of divorce relative to the support for a minor child after the child has become of age, we are unanimously of the opinion that the trial court properly proceeded with the hearing on Mr. Erickson's application for delivery of his portion of the stock and for an accounting, and Mrs. Erickson's answer and request for contribution for the support of the minor child and Mr. Erickson's answer thereto.

Mr. Erickson concedes that Mrs. Erickson might have had the interlocutory decree modified as soon as the girl entered the university, but he urges that, since she did not do so at that time, the court was without jurisdiction to give her any relief in this proceeding. He further takes the position that, if she has a right to maintain an action against him for contribution to the daughter's support, her right to such contribution, if any, cannot be asserted in this proceeding.

■ This Department of the court is divided upon the question of whether or not the trial court could enter judgment for contribution against Mr. Erickson in this proceeding, and no decision is made on that point, We are, however, unanimously of the opinion that the appellant is not entitled to receive what he has asked for, *i. e.*, delivery of "one-half of the shares of stock in the Portland Cement Association," until he has paid to Mrs. Erickson the very modest sum of seven hundred fifty dollars fixed by the trial court as contribution to the girl's support after she quit work and entered the university.

■ ■ The divorce action from its inception was an equitable proceeding. *State ex rel. Hunter v. Ronald,* 106 Wash. 413, 180 Pac. 125; *Wadsworth v. Wadsworth,* 81 Cal. 182, 22 Pac. 648, 15 Am. St. 38; *Borg v. Borg,* 25 Cal. App. (2d) 25, 76 P. (2d) 218; 17 Am. Jur. 152, § 9. Mr. Erickson requested the further aid of a court of equity to secure for him the delivery of certain stock and an accounting. He who seeks equity must do equity, is one of the historic maxims. In *Central Improvement Co. v. Cambria Steel Co.,* 201 Fed. 811, it is said:

"A court of chancery will, and it is its duty to, condition its grant of relief to a complainant with the enforcement of any just claim of the defendant which the latter ought in equity and good conscience to pay, although on account of the statute of limitations, or for some other reason, the defendant might not be able affirmatively to enforce it." (Citing cases.)

The case of *United Cigarette Machine Co. v. Brown,* 119 Va. 813, 89 S. E. 850, L. R. A. 1917F, 1100, is cited in support of the following statement from 19 Am. Jur. 51, § 22:

"The court may require the enforcement of a claim or equity which is held by the defendant and which, by reason of the statute of limitation or a former judgment, the latter could not enforce affirmatively or in any other way."

Mr. Erickson contends that the trial court erred in finding an implied agreement to contribute to the support of the girl during the period that she might attend the university before she became of age. To prove that there was no such agreement, he sets out Mrs. Erickson's testimony on cross-examination, as follows:

"Q. You say that Mr. Erickson promised you to pay for the support of this child when she went to the University? A. Promised it in court. Q. Did he promise it to you? . . . Did Mr. Erickson make any oral promise to you? A. I assumed it was to me, certainly. Q. Did he make any direct statement to you? A. He made a direct statement to Judge Ronald. Q. What was the question of Judge Ronald? A. Judge Ronald asked him in the event that the girl went back to school or became not self-supporting, what would be his position, would he resume the payments; and he said yes, he would. . . .
"Q. In response to that, the Court entered the order that I have introduced in evidence as Plaintiff's Exhibit 3? [Appellant's brief corrects the question to read "Exhibit 2," which is the order of May 13, 1943.] A. That is right. Q. Is that correct? . . . Put upon you the duty to apply to the Court to have it reinstated? A. That is correct. Q. And that was the Court's order after Mr. Erickson made such a statement—A. That is correct. Q. To the Judge? A. That is right."

Mr. Erickson's version of what occurred before Judge Ronald is also set forth in the brief, as follows:

"Q. With reference to the time that the order was modified by Judge Ronald in May, 1943, you were in court and testified? A. Yes. Q. Do you remember what was said by the Court as to any future payments to be made if she went to school, and what your reply was to the Court? A. The court said that the case could be opened at any time that there was an application made, for the purpose of reestablishing the payments. Q. And what reply did you make? A. Well, that was satisfactory."

Although the trial judge apparently believed Mrs. Erickson's version, as he had a right to do, we must agree with Mr. Erickson that even her testimony shows no promise by him to her or any agreement made with her. It was merely a representation made to the court which, from Mr. Erickson's point of view, was apparently of no sanctity and little consequence.

We therefore do not predicate our decision on any implied agreement based on any statement or representation made by Mr. Erickson to Judge Ronald, but on the proposition that, before a court of equity will grant him the relief he desires, he will be required to perform the natural duties of a father which should be performed without compulsion and without quibbling about whether there was or was not an implied agreement so to do.

Mr. Erickson complains that, in any event, he should not be required to pay more than six hundred seventy-five dollars, because the trial court made a finding that Mrs. Erickson had paid for the girl's

"... living and school expenses, including tuition, books, clothes and sundry necessities for a period of 30 months before arriving at the age of majority, greatly in excess of $1350."

The trial judge did not explain how he arrived at that figure, and it was demonstrably too low. It was not the basis of the trial court's judgment; and we are convinced that, if the trial court erred in arriving at the figure of seven hundred fifty dollars as the amount of Mr. Erickson's contribution for the support of his daughter while she was attending the university, it was because the amount was too small and not because it was too large.

Our view is that the expenditures for which Mrs. Erickson was clearly entitled to contribution from Mr. Erickson were twelve hundred dollars for expenses while the girl was attending the university (fifty dollars a month for twenty-four months) and five hundred dollars for clothes (two hundred dollars a year for two and one-half years), or a total of seventeen hundred dollars. Half of that amount would be eight hundred fifty dollars.

No contribution was asked from Mr. Erickson for the vacation periods, three months each in 1944 and 1945. The girl did not work during the 1944 vacation but did work in 1945, making some four hundred dollars. If Mr. Erickson believes he is entitled to credit for any portion of this four hundred dollars left after payment of the girl's living expenses for the six vacation months, we are sure that the rule of *de minimis non curat lex* would apply.

While, as previously stated, we are not prepared to hold that Mrs. Erickson is entitled to a judgment as given by the trial court, the case is remanded to the trial court with instructions to enter an order directing delivery to Mr. Erickson of his half of the stock of the Superior Portland Cement Association (or one half of the stock and debentures which have been received as the result of a corporate reorganization, in lieu of the stock originally delivered to Mrs. Erickson), and his half of any income derived therefrom since February 7, 1947, upon the payment by him to Mrs. Erickson of the sum of $602.84 (being $750 less $147.16). The order to be entered by the trial court should further provide that, in the event the $602.84 is not paid within thirty days after the entry thereof, Mrs. Erickson may apply the income derived from appellant's half of the stock of the Superior Portland Cement Association (or from his half of the stock and debentures which have been received as the result of a corporate reorganization, in lieu of the stock originally delivered to Mrs. Erickson) to the payment of the sum of $602.84, with interest thereon from the date of the order, and that she may continue so to do, reserving to Mr. Erickson the right at any time to pay any unpaid balance of the aforesaid sum of $602.84, together with interest thereon, and on such payment to receive his half of the stock and securities hereinabove referred to.

While the judgment of the trial court has not been affirmed, the appellant has not secured such relief here as should entitle him to any costs, and neither the appellant nor the respondent will recover costs on this appeal.

MALLERY, C. J., MILLARD, and SIMPSON, JJ., concur.

SCHWELLENBACH, J., concurs in the result.