[S. F. No. 17593. In Bank. Feb. 6, 1948.]

FRANCIS A. WILSON, Petitioner, v. THE SUPERIOR COURT OF THE CITY AND COUNTY OF SAN FRANCISCO, Respondent.

A. B. Dunne and Dunne & Dunne for Petitioner.

Vincent W. Hallinan and James Martin MacInnis for Respondent.

SPENCE, J.—This is a proceeding in certiorari to review an order of the respondent court adjudging petitioner guilty of contempt and committing him to imprisonment in the county jail for failure to make certain alimony payments alleged to be due under the terms of an interlocutory decree of divorce. In avoidance of such impending commitment, petitioner paid the disputed sums. It is conceded that a final judgment of contempt is properly reviewable on certiorari (5 Cal.Jur. § 50, p. 955; *Tripp* v. *Tripp*, 190 Cal. 201, 202 [211 P. 225]; *Brunton* v. *Superior Court*, 20 Cal.2d 202, 204 [124 P.2d 831]; *Taylor* v. *Superior Court*, 20 Cal.2d 244, 246 [125 P.2d 1]; *Rose* v. *Superior Court*, 44 Cal.App.2d 599, 600 [112 P.2d 713]), but it is argued that "the point . . . has become moot inasmuch as" petitioner, "when ordered into . . . custody . . ., paid the alimony judgment now under contest." However, the law is otherwise and such payment, under legal compulsion, does not preclude a consideration of the question whether the respondent court has exceeded its jurisdiction in making the order presented for review. (*Hume* v. *Superior Court*, 17 Cal.2d 506, 512 [110 P.2d 669]; *Null* v. *Superior Court*, 4 Cal.App. 207, 211 [87 P. 392]; *Dreher* v. *Superior Court*, 124 Cal.App. 469, 477 [12 P.2d 671].) That the respondent court has so acted appears from the record of the matters which constituted the basis of the contempt adjudication.

The circumstances giving rise to the contempt proceedings may be briefly stated. On April 4, 1945, Barbara Wilson was awarded an interlocutory decree of divorce from petitioner, Francis A. Wilson. That decree contained certain provisions for the disposition of the community property of the parties

and provided that petitioner make an alimony payment of $500 per month. Petitioner appealed therefrom. During the pendency of the appeal and on August 1, 1945, the respondent court made its "order [for alimony] pending appeal" in "the sum of $600.00 per month, payable . . . until the appeal of this cause is determined." It was further provided that such "payments of alimony pending appeal . . . shall be deemed credits against and shall be applied against payments of alimony ordered to be made in the interlocutory decree heretofore entered, in the event said decree, or that portion of it which provides for said alimony payments, is affirmed or otherwise so becomes final." On September 18, 1946, the interlocutory decree was affirmed, with the modification that distribution of the community property take place upon entry of the final decree. (*Wilson* v. *Wilson*, 76 Cal.App.2d 119, 133 [172 P.2d 568].) Petitioner on that appeal made "no attack on those portions [of the decree] granting his wife the right to a divorce or granting her alimony. . . ." (*Ibid.*, p. 122.) Some 16 days following the filing of the remittitur and on December 5, 1946, the final decree of divorce was entered in pursuance of the affidavit made therefor by the wife, Barbara Wilson. It simply ordered that "a divorce be, and it hereby is, granted . . . that the marriage . . . be . . . dissolved and the . . . parties . . . restored to the status of single persons." It contained no other provisions—as to alimony, support and maintenance, property distribution, or otherwise.

Taking the position that the silence of the final decree of divorce as to alimony payments relieved him of such obligation, petitioner on January 6, 1947, filed a formal statement to that effect with the respondent court; and pending the hearing of his objections in the matter, petitioner thereupon made the $500 monthly payment required under the terms of the interlocutory decree as above mentioned. Petitioner followed the same procedure for the succeeding four months, in each instance paying the $500 alimony "in open court . . . contemporaneously with the filing" of his objections as to his obligation therefor. But in June and July, 1947, petitioner failed to make the $500 payments as specified. Petitioner's former wife thereupon filed affidavits reciting the previous adjudication as to alimony payments, and in response thereto, the respondent court ordered petitioner to show cause why he should not be adjudged in contempt for

failure to meet his alleged obligations. Hearings in the matter were had on July 17 and 21, 1947, at which time petitioner urged these points: (1) That since the final decree of divorce "contains no provision . . . for alimony . . . [he] is not obligated to pay . . . any [such] sum or at all"; and (2) that his payment of $600 instead of $500 per month alimony beginning August 1, 1945—under the terms of the "order of court pending appeal" that day made—and including December 1, 1946, constituted "excess payments of $100.00 per month," and that for having so "overpaid" for the stated 17 months, he was entitled to a credit of $1,700. The respondent court ruled adversely to petitioner on both points and on July 22, 1947, made its order adjudging petitioner guilty of contempt for refusal to make the June and July, 1947, alimony payments and committing him to jail until he discharged his said obligations. Execution of the order of commitment was stayed seven days to permit petitioner "to purge himself of said contempt." As required, petitioner made the contested payment of $500 for each of the two aforesaid months, or $1,000, and he is now before this court in challenge of the propriety of the contempt adjudication.

There is clearly no merit in petitioner's primary claim that "since the final decree made no reference to the subject of alimony, he is entitled to relief from the payment required by the interlocutory judgment." This precise point was argued in *Mathews* v. *Mathews*, 49 Cal.App. 497, 498-499 [193 P. 586], where, as here, the "interlocutory judgment . . . granted" the wife "permanent alimony" and "the final decree of divorce . . . was silent on the subject of maintenance or alimony." Some "six months" after "the entry of such final decree," the husband "moved to modify the interlocutory judgment by vacating the portion thereof which provide[d] for the payment of alimony." He prevailed in the trial court, but on appeal the order was reversed. In so ruling, the appellate court said at page 500: "In the instant case the right to alimony was presented and litigated in the action and established by the interlocutory judgment. The trial court would have the right to modify the order in that respect in and by the final decree, as well as before or after entering the same—but it did not do so, nor can it be said that the judgment was modified by the final decree in respect to alimony simply because such decree is silent on that subject. On the contrary, silence at such time must be construed

to be acquiescence in the correctness of the previous judgment on that subject.''

Such reasoning accords with the recognized scope of the dual-divorce decree procedure created by the legislation of 1903. (Civ. Code, §§ 131, 132.) Thus, it was said in *Newell* v. *Superior Court,* 27 Cal.App. 343, at pages 344-345 [149 P. 998] : ''It has been determined that in a divorce action under the provisions of our code the function of an interlocutory decree includes not only the establishment of the right of a party to a divorce but includes also the hearing and final determination of the rights of the parties as to property. Any disposition of property rights made in connection with the hearing of the principal cause of action is regularly included in and becomes a part of the interlocutory decree. If no appeal be taken, such decree becomes final with respect to those property rights, as well as with respect to the adjudged right to a divorce. (*Huneke* v. *Huneke,* 12 Cal.App. 199, 203, [107 P. 131] ; *Pereira* v. *Pereira,* 156 Cal. 1, [134 Am.St.Rep. 107, 23 L.R.A.N.S. 880, 103 P. 488].) Necessarily the same consequence follows where the court takes into consideration and includes in its interlocutory decree the matter of provision for the support of the wife.'' To like effect was the observation in *Parnham* v. *Parnham,* 32 Cal.App.2d 93, at page 96 [89 P.2d 189] : ''The interlocutory decree in a divorce action becomes final and is *res judicata* on all questions determined therein, including ordinarily the property rights of the parties, except the final dissolution of the marriage which is generally the only question held in abeyance until the entry of the final decree. (*Overell* v. *Superior Court,* 29 Cal.App.2d 418 [84 P.2d 789] ; *Borg* v. *Borg,* 25 Cal.App. 2d 25 [76 P.2d 218].)''

''Alimony is an allowance for support and maintenance pending or subsequent to divorce.'' (*In re Lazar,* 37 Cal. App.2d 327, 332 [99 P.2d 342] ; see 1 Cal.Jur., § 2, p. 944.) With reference to the time for which such allowance is intended, alimony is divided into two classes: *temporary* or ''alimony pendente lite,'' signifying an award during the pendency of an action for divorce or separate maintenance, as distinguished from *permanent,* signifying an award made in conjunction with the determination of the merits of the action. (See 1 Cal.Jur., § 3, p. 946.) ▪ An award of temporary alimony is terminated by the interlocutory decree, so that unless provision for permanent alimony is made at

that time or the question is reserved for later consideration by the court, all liability for payment in that regard ceases. So it was decided in *McCaleb* v. *McCaleb*, 177 Cal. 147 [169 P. 1023], where after making an order for temporary alimony in favor of the wife, the court proceeded with the trial on the merits and rendered an interlocutory decree of divorce which neither mentioned the subject of maintenance or alimony nor reserved the matter for further disposition. In those circumstances it was held that the order for temporary alimony was merged in the final judgment on the merits— that is, the interlocutory decree—and the husband's obligation in that respect came to an end. The right to alimony, like other financial and property rights of the parties, is properly at issue at the time the cause of action for divorce is tried and determined, and the ensuing interlocutory decree is intended to bring an end to all matters so litigated and in controversy. (*Ibid.*, pp. 149-150.) But such decision lends no support to petitioner's argument that upon entry of a final decree of divorce, the interlocutory decree is merged therein so that a provision for permanent alimony, as settled thereby between the parties, is no longer effective unless carried into the final decree. Rather the rationale of the McCaleb case rests wholly on the well-defined distinction between temporary alimony awarded the wife "until the decision of the cause on the merits" and permanent alimony awarded at the conclusion of the trial after the court has received "full knowledge of the condition, abilities, and circumstances of the respective parties, and may then advisedly adjudge what is lawful and just to each of them with respect to the right to the divorce and the right of the wife to alimony, if a divorce is granted, or to maintenance if a divorce is denied." (177 Cal. 149.) So a provisional order for alimony pendente lite would merge into the interlocutory decree as a "final judgment on the merits" terminating any rights resting on a preliminary proceeding "unless expressly reserved by some provision in the judgment itself." (177 Cal. 152.) In thus viewing the right to alimony as any financial or property right of· the parties, distinct from the status of the parties and the severance of the marital relation upon entry of the final decree of divorce (cf. *Klebora* v. *Klebora*, 118 Cal.App. 613, 618 [5 P.2d 965]), the McCaleb case conforms with the general theory of the law that "the interlocutory decree becomes a conclusive adjudication and is res judicata with

respect to all issues determined." (*Leupe* v. *Leupe*, 21 Cal. 2d 145, 148 [130 P.2d 697], and numerous authorities there cited.)

■ It is true that in the case of an award of permanent alimony, the court, by virtue of section 139 of the Civil Code, retains continuing power to modify its order "in respect of the support of the wife to meet changed conditions." (*McClure* v. *McClure*, 4 Cal.2d 356, 360 [49 P.2d 584, 100 A.L.R. 1257].) However, until so judicially modified or vacated "in accordance with the methods applicable to judgments generally" (*Leupe* v. *Leupe, supra,* 21 Cal.2d 145, 148), an award of permanent alimony contained in an interlocutory decree would appear entitled to the same respect or finality as any other substantive right litigated and determined by such decree. (*Dupont* v. *Dupont,* 4 Cal.2d 227, 228 [48 P.2d 677].) Upon a proper showing of the financial "circumstances of the parties" (*Leupe* v. *Leupe, supra,* 21 Cal.2d 145, 150), such award might be modified or superseded by appropriate provision in the final decree of divorce, but in the absence of such affirmative procedure upon entry of the final decree in absolute dissolution of the marriage, the interlocutory decree would remain standing as res judicata on the alimony issue as determined in response to the factual situation presented at the time the cause of action for divorce was established. So here, the failure of the final decree to include the alimony provision of the interlocutory decree does not relieve petitioner of his previously adjudicated obligation. (*Mathews* v. *Mathews, supra,* 49 Cal.App. 497, 501.)

Petitioner cites certain cases holding that the husband may be absolutely relieved of the obligation of paying alimony. Thus where the court fails to provide alimony for the wife in the original decree of divorce, and it does not reserve the power, there is no jurisdiction to make an award later. (The "final decree" in *Howell* v. *Howell* (1894), 104 Cal. 45, 48 [37 P. 770, 43 Am.St.Rep. 70], and *O'Brien* v. *O'Brien* (1900), 130 Cal. 409, 410 [62 P. 598] ; but since the legislation of 1903 creating the present dual-divorce decree procedure, the "interlocutory decree," *Bacigalupi* v. *Bacigalupi* (1925), 72 Cal.App. 654, 658 [238 P. 93].) Also the court, by its order "modifying" a previous alimony allowance, may terminate finally the husband's obligation to make such payments. (*McClure* v. *McClure, supra,* 4 Cal.2d 356, 360.) Similarly where the court appropriately provides for alimony

payments for a definite term without reserving the right to change or modify the term, it has no power to make a further allowance for support after such term has elapsed and the money has been paid. (*Tolle* v. *Superior Court,* 10 Cal.2d 95, 98 [73 P.2d 607]; *Long* v. *Long,* 17 Cal.2d 409, 410 [110 P.2d 383].) But there are no parallel considerations here in view of the respondent court's express award, without limitation, in the interlocutory decree and the absence of any subsequent order affirmatively manifesting an intent to modify petitioner's alimony obligation as so adjudicated upon the determination of the cause of action for divorce. Nor does the case of *Amell* v. *Amell,* 10 Cal.2d 153 [73 P.2d 888], which petitioner cites for the settled proposition that there "can be only one final judgment in an action" (p. 155), strengthen his position. There the interlocutory decree of divorce was vacated (Code Civ. Proc., § 663), and "another and different judgment [was] entered in lieu thereof," which then became "the only judgment in the case," furnishing "the sole guide as to the respective rights and obligations of the parties to the action" and subject to attack by appeal or new trial proceedings (p. 155). Manifestly, such observations with regard to that distinct factual situation have no relevancy to the "conclusive adjudication" of the interlocutory decree as it stands under the record in this case.

Likewise without force is petitioner's reference to the decisions in *Cardinale* v. *Cardinale,* 8 Cal.2d 762 [68 P.2d 351], and *Calhoun* v. *Calhoun,* 81 Cal.App.2d 297 [183 P.2d 922], as exemplifying the rule that the marital status must be in existence at the time the alimony award is made. Both cases involved the power of the California court to grant an allowance for support to the wife as the question was raised *after* the husband had obtained in another jurisdiction a divorce decree dissolving the marriage and making no provision for such contribution by him. But here the alimony obligation was imposed on petitioner while the marital status was in existence and upon rendition of the interlocutory decree. The question of alimony was then at issue and adjudicated. (Cf., *Bernard* v. *Bernard,* 79 Cal.App.2d 353, 356 [179 P.2d 625].) While better practice would recommend at least a reference in the final decree to such outstanding and continuing provision as the alimony award here made in the interlocutory decree in settlement of a financial right between the parties, the fact that such provision was not

carried into the final decree does not preclude its enforcement thereafter. (*Mathews* v. *Mathews, supra,* 49 Cal.App. 497, 501.)

There still remains, however, the question of whether the respondent court could justifiably hold petitioner guilty of contempt upon the record before it. As above recited, petitioner, in pursuance of the "order of court pending appeal," paid for a period of 17 months the sum of $600 instead of $500 per month alimony as awarded in the interlocutory decree. It is contended on behalf of petitioner's former wife, and the respondent court so ruled, that the increased monthly amount represented an added responsibility imposed on petitioner for the period involved, and that upon affirmance of the interlocutory decree (*Wilson* v. *Wilson, supra,* 76 Cal. App.2d 119), petitioner's original obligation became again effective, disassociated from the intervening payments. But the express language of the order in question does not permit such construction. It specifically provided that "payments of alimony pending appeal . . . shall be deemed *credits against and shall be applied against* payments of alimony ordered to be made in the interlocutory decree heretofore entered . . ." The italicized wording is free of ambiguity and can only mean that the "excess payments" were intended as an "offset" on petitioner's alimony obligation account (see 21 C.J.S. 1043) "in the event said [interlocutory] decree . . . [was] affirmed . . ." It therefore appears that petitioner built up a credit of $1,700 to "be applied against" the alimony award under the interlocutory decree, and that there still remained a balance of $700 in his favor at the time he was adjudged guilty of contempt for refusing to make the June and July, 1947, alimony payments of $500 each, or $1,000. In such circumstances the respondent court exceeded its jurisdiction and petitioner is entitled to relief accordingly.

The order adjudging petitioner guilty of contempt is annulled.

Shenk, J., Edmonds, J., Carter, J., Traynor, J., Schauer, J., and Nourse, J. pro tem., concurred.