[Civ. No. 22603.   Second Dist., Div. Three.   May 13, 1958.]

FLORENCE MAE MADDEN, Appellant, v. HARRY WILBUR MADDEN, Respondent.

Malvina Goodstein for Appellant.

O. Phillips Anderson for Respondent.

VALLÉE, J.—This is an action for divorce. In the interlocutory decree the court adjudged that defendant is not the father of a minor child named Charles. Plaintiff appeals from that part of the decree adjudging that defendant is not the father of the child and from an order denying her motion for a new trial with respect to that issue. The order denying a new trial is not appealable and the appeal therefrom must be dismissed.

Plaintiff asserts the court erred in admitting evidence of a blood test. Dr. Madeline Fallon testified a technician in her office drew blood samples from plaintiff, defendant, and the child Charles; she was not present when the blood was drawn. Over plaintiff's objection Dr. Fallon was then permitted to testify that a test was made and she found that "The blood group, Mr. Madden, Group O; Florence Madden, Group O; Baby Charles, Group A"; that the children of plaintiff and defendant "would have to be O"; none of their offspring "could have any A or B group in their tests"; defendant could not possibly be the father of Charles.

It is first argued it was error to admit the evidence because under section 1962, subdivision 5, of the Code of Civil

Procedure Charles is conclusively presumed to be legitimate. Section 1962 in relevant part reads:

"The following presumptions, and no others, are deemed conclusive: . . .

"5. Notwithstanding any other provision of law, the issue of a wife cohabiting with her husband, who is not impotent, is indisputably presumed to be legitimate."

Section 193 of the Civil Code reads:

"All children born in wedlock are presumed to be legitimate."

Section 1963, subdivision 31, of the Code of Civil Procedure is to the same effect.

■ The word "cohabiting" as used in section 1962, subdivision 5 of the Code of Civil Procedure means the living together of a man and woman ostensibly as husband and wife, in which case the parties are not permitted to rebut the conclusive presumption created by the statute. (*Estate of Mills*, 137 Cal. 298, 301 [70 P. 91, 92 Am.St.Rep. 175]; *Daniels v. Daniels*, 156 Cal.App.2d 371, 373 [319 P.2d 662].) ■ Testimony of nonintercourse is not precluded where the husband and wife have not cohabited or lived together at the time and during the period of conception and gestation. (*Hilton v. Hilton*, 54 Cal.App. 142, 150-151 [201 P. 337]; *Estate of Young*, 132 Cal.App.2d 25, 28 [281 P.2d 368]; *McGillis v. Hofeditz*, 101 Cal.App.2d 760, 762 [226 P.2d 372]; *Mathews v. Hornbeck*, 80 Cal.App. 704, 708-709 [252 P. 667].) ■ "*Estate of Walker*, 180 Cal. 478 [181 P. 792], *Dazey v. Dazey*, 50 Cal.App.2d 15 [122 P.2d 308], and other cases, lay down the rule that a conclusive presumption may be removed by proper and sufficient evidence showing that the husband, though not impotent, was 'entirely absent at the period during which the child must in the course of nature have been begotten.'" (*Estate of Young*, 132 Cal.App.2d 25, 28 [281 P.2d 368].)

■ The complaint alleged the date of last separation of the parties was July 15, 1955. The answer admitted the allegation. Charles was conceived in October 1955 and born July 22, 1956. Thus the parties were not cohabiting or living together at the time· of conception and section 1962 did not preclude admission of the blood tests.

What we have said disposes of plaintiff's contention that the court erred in permitting defendant to testify he did not have sexual intercourse with his wife after the parties separated in July 1955.

■ Contending there was no foundation laid for admission of the blood tests, plaintiff argues there was no proof the blood with respect to which Dr. Fallon testified was the blood of plaintiff, defendant, or the child. The point is well taken. Dr. Fallon did not draw the blood. She was not present. There was no evidence that the blood groups as to which Dr. Fallon testified were those of plaintiff or defendant or the child. Plaintiff testified she, defendant, and the child went to Dr. Fallon's office "for a blood test." She was asked whether a nurse took a sample of blood from her, defendant, and Charles but the question was not answered.

In *McGowan* v. *City of Los Angeles*, 100 Cal.App.2d 386 [223 P.2d 862, 21 A.L.R.2d 1206], on similar facts this court held that testimony as to the results of the blood analysis was inadmissible. Here there is complete lack of identification of the blood tested by Dr. Fallon. In fact she was not asked if she made the tests, although perhaps that fact may be inferred. There was no evidence that any blood was ever drawn from plaintiff, or from defendant, or from Charles. Dr. Fallon had no personal knowledge on the subject. If any blood was drawn, there was no evidence as to the identity of the person who drew it, or how long after it was drawn tests were made.

■ "It is rudimentary that a specimen taken from a human body for the purpose of analysis must be identified before such specimen or any analysis made from it attains standing as evidence of the condition of the person whose conduct is questioned. Without identification, there is no connection between the two. Reason dictates that the testimony of a witness that a blood sample contains alcohol without some evidence to show that the blood is that of the person charged amounts to no proof at all." (*American Mut. etc. Co.* v. *Industrial Acc. Com.*, 78 Cal.App.2d 493, 496 [178 P.2d 40].) The court erred in admitting the testimony of Dr. Fallon. The failure to identify the blood tested as that of plaintiff, defendant, and Charles renders the testimony of Dr. Fallon of no evidentiary value at all.

■ The question remains whether the error in admitting the testimony was prejudicial. Plaintiff testified she and defendant had sexual intercourse the second or third week of October 1955 "and also before that a couple of times"; it took place in the front room of her home; "Q. . . . When was this sexual intercourse in October—what day? A. I don't know which day. All I know it was about the third week—it was about a week before I filed for my divorce. If his mother

remembers, he went to the war surplus store and got something. I don't know whether it was a cot or something. I happened to go with him. He will remember that. Q. Do you remember when you filed your divorce? A. Yes, it was October 27th. Q. The twenty-sixth, as a matter of fact. You say it was a week before that. It would be October 19th you had sexual intercourse. Is that right? A. About that. I don't know a day before or after. I didn't keep track of it. I didn't think it would make much difference, the 17th, eighteenth, nineteenth, or twentieth. Somewhere around then. That was in there around then. Q. That was in your front room? A. Yes. Q. What time of day was that? A. Afternoon. Q. About two? What time? A. About two or three o'clock. Q. Two or three? A. Yes. Q. Now, was there any contraceptives used? A. No. Q. And after October you had relations with him again? A. No, I never saw him again after I filed for my divorce and she served him with the papers.'' Defendant testified that between July and October 1955 he did not see plaintiff alone; he did not have sexual intercourse with her in October 1955 in the front room of her home. On one side there is the testimony of plaintiff and the presumption of legitimacy; on the other there is the testimony of defendant. In view of this decided conflict in the evidence we cannot say that a different result as to the paternity of Charles might not have been reached had the testimony of Dr. Fallon been excluded.

The appeal from the order denying a new trial is dismissed. The part of the judgment appealed from is reversed.

Shinn, P. J., and Wood (Parker), J., concurred.