[Civ. No. 26191.   Second Dist., Div. One.   Nov. 13, 1962.]

JACQULYNE MAY ADAMSON, Plaintiff and Respondent,
DOUGLAS J. ADAMSON, Defendant and Appellant.

Johnston, Lucking & Henson and Burt M. Henson for Defendant and Appellant.

Durley, Todd, Cearnal & Marshall and Carl A. Becker for Plaintiff and Respondent.

FOURT, J.—This is an appeal from an order modifying an interlocutory judgment of divorce.

A résumé of some of the facts and the procedure taken is as follows:

On November 21, 1960, plaintiff wife, by and through Hammons & Willard, by Hal V. Hammons, Jr., filed a complaint for a divorce charging extreme cruelty. It was therein alleged that "*there are no children the issue of said marriage.*" (Emphasis added.) Further, it is alleged in paragraph IV thereof: "That the parties hereto have *settled their community property interests* as and between themselves and that it would be fair, just and equitable if *defendant were to pay to plaintiff the sum of $50.00 per month for a period of twelve months.*" Plaintiff prayed for judgment:

"1. That the bonds of matrimony now existing between the plaintiff and defendant be forever dissolved; 2. That defendant be ordered to pay to plaintiff the sum of $50.00 per month for twelve consecutive months; 3. That upon trial of this

494

action defendant be ordered to pay to plaintiff's attorneys a reasonable sum as and for attorneys' fees together with a further sum as and for costs incurred herein; 4. For such other and further relief as may be just and proper in the premises."

There were no allegations in the complaint with reference to the ability of the husband to pay support and maintenance to the wife or with reference to her needs for support and maintenance. There were allegations concerning his ability to pay for her attorneys' fees and her need therefor.

Defendant did not answer the complaint and on December 7, 1960, the order to enter default was filed. The testimony upon the part of the wife in the divorce hearing was crystal clear to the effect that she was the wife of the defendant, that she had the proper residence in the county and state and that there were *"no children the issue of this marriage."* The mother of the wife corroborated the wife's testimony and stated that her daughter's testimony was true of her own knowledge. On the same date the interlocutory judgment of divorce was filed and entered. It provides in pertinent part as follows:

". . . the Court now makes its findings of fact and decision as follows:

*"That the allegations contained in the complaint are true;* and that a judgment dissolving the marriage between plaintiff and defendant ought to be granted.

"It Is ADJUDGED that plaintiff is entitled to a divorce from defendant; that when one year shall have expired after the entry of this interlocutory judgment a final judgment dissolving the marriage between plaintiff and defendant be entered, and at that time the Court shall grant such other and further relief as may be necessary to a complete disposition of this action.

"It Is FURTHER ORDERED, ADJUDGED AND DECREED that defendant pay to plaintiff the sum of $50.00 per month for twelve consecutive months.

"It Is FURTHER ORDERED, ADJUDGED AND DECREED that defendant pay to Hammons & Willard, plaintiff's attorneys, the sum of $175.00 as and for plaintiff's attorneys' fees, together with the further sum of $18.00 as and for costs incurred herein.

"It Is FURTHER ORDERED, that plaintiff be restored to her maiden name of Jacqulyne Mae [*sic*] Rolls." (Emphasis added.)

On June 23, 1961, an order to show cause re modification of the interlocutory judgment of divorce was issued. The hus-

band was cited to appear in court on July 3, 1961. The originals of the documents in that proceeding (affidavit for order to show cause and order to show cause) were prepared by the present counsel for the wife. Present counsel necessarily had to interview, discuss and advise with the wife about the case, although at the time of preparing such documents (June 22, 1961) Hammons & Willard were the attorneys of record for the wife. The documents (in the order to show cause proceeding) were filed July 17, 1961. A substitution of attorneys dated July 5, 1961, was filed on August 24, 1961. Present counsel for the wife were substituted into the case as such in the place of Hammons & Willard.

The wife asserted in part in her affidavit in support of the order to show cause as follows:

"(2) . . . *That a child was conceived by the parties hereto prior to granting of interlocutory judgment of divorce and that plaintiff's doctor expects such child to be born during August 1961*; that plaintiff's physical condition prevents her remaining employed; that necessary medical bills incident to birth and care of such child will be incurred; *that a child, JAMES FLOYD ADAMSON, born December 1, 1959, is a natural child of the marriage of the parties hereto and that no order awarding custody or support of said child has been made by the court,* and that the parents of plaintiff have been contributing to the support of said child but are no longer in a position to do so; that plaintiff is a fit person to have custody of James Floyd Adamson; and defendant is able to provide for the support and maintenance of James Floyd Adamson.

". . . . . . . . . . . .

"(4) Based upon the foregoing facts I hereby declare that it will be fair, equitable and reasonable to, and I request the court to modify the above-mentioned Order and make further, different or additional Orders, as follows, to wit: That plaintiff be awarded custody of James Floyd Adamson; that defendant pay to plaintiff for the support and maintenance of said child the sum of $90 per month; that upon the birth of the presently existing but unborn child of the parties, plaintiff be awarded the custody of such child and defendant pay to plaintiff for the support and maintenance of such child the sum of $90 per month; that said payments to plaintiff for the support and maintenance of each child be made until such child reaches the age of 21 years or until further order of this court; that defendant pay to plaintiff for her support and maintenance the sum of $150 per month for a period of six consecutive

months, and thereafter pay to plaintiff for her support and maintenance the sum of $50 per month until the death of either party, the remarriage of plaintiff, or further order of this court; that all payments herein ordered be made to plaintiff on the 1st day of each month, commencing on the 1st day of the first month following this order; that defendant pay to . . . plaintiff's attorneys, the sum of $150 as and for plaintiff's attorneys' fees; that the interlocutory judgment of divorce be modified to allow plaintiff to retain her married name of Jacqulyne May Adamson." (Emphasis added.)

On July 10, 1961, present counsel appeared for the respective parties. The cause was continued to July 17, 1961. The hearing started on the 17th day of July, 1961, and continued into the next day, when it was concluded.

There can be no question but that the wife intended the hearing to be a relitigation of the matter of parentage, for her counsel stated at the very outset of the hearing, "we would like to hear the matter, *present evidence on the matter of paternity* before we go into the matter of custody and support . . ." Proper objections were immediately made by counsel for the husband. It was asserted that the matter in so far as paternity was concerned was res judicata, that the wife was in effect attempting to relitigate the matter of paternity, and that that matter had been determined as between the husband and wife and the judgment was final.

A minute order dated July 18, 1961, provides in part as follows:

"Testimony is now concluded and counsel for respective parties argue the cause to the Court.

"Counsel for defendant, in his argument moves for a continuance until after the birth of the child.

"Said motion is denied by the Court.

"The Court denies a motion by counsel for defendant for a physical examination of parties herein.

"The Court finds that defendant is the father of child No. 1 also defendant is the father of the unborn child.

"The Court orders that defendant pay to plaintiff the monthly sum of $25.00 for support of the first child and the monthly sum of $25.00 for support of the second child after birth; that defendant pay to plaintiff's attorney the sum of $150.00 on account, as attorney's fees herein, *and that defendant pay no alimony to plaintiff.*

"It is further ordered that plaintiff may resume the name of Jacqulyne May Adamson." (Emphasis added.)

On August 14, 1961, (prior to the time the written judgment after trial by court was signed and filed) the defendant filed his notice of intention to move for new trial (dated August 11, 1961).  On August 18, 1961, the husband filed objections to the proposed findings of fact and conclusions of law.  On August 23, 1961, a memorandum in support of the motion for new trial was filed.

The findings of fact and conclusions of law were signed by the judge and filed on August 31, 1961,[1] and provide in pertinent part as follows:

### "FINDINGS OF FACT

"It is true that:

"1. A child, namely, JAMES FLOYD ADAMSON, was conceived by the parties hereto; that such child was born during the marriage of the parties; that such child is the son of DOUGLAS J. ADAMSON and JACQULYNE MAY ROLLS.

"2. A second child was conceived by the parties hereto while married and living together as man and wife; that such child will be born prior to the time a final decree of divorce dissolving the marriage of the parties may be entered; that such child is the child of DOUGLAS JAMES ADAMSON and JACQULYNE MAY ROLLS.

"3. Plaintiff is a fit person to have custody of both children of the marriage.

"4. Defendant is able to help provide for the support and maintenance of the children of the marriage.

"5. Defendant is able to pay alimony to plaintiff in the amount of $1.00 per month.

"6. It is for the best interest of the plaintiff and of the children of the marriage that plaintiff be restored her married name of JACQULYNE MAY ADAMSON.

### "CONCLUSIONS OF LAW

"From the foregoing facts the Court concludes that the Interlocutory Judgment of Divorce be modified to provide that.

"1. JAMES FLOYD ADAMSON is the child of DOUGLAS JAMES ADAMSON and JACQULYNE MAY ROLLS.

"2.  The child to be born to JACQULYNE MAY ROLLS on approximately August 22, 1961 is the child of DOUGLAS JAMES ADAMSON and JACQULYNE MAY ROLLS.

---

[1] "The universal practice in this state is not to require findings on an order made after motion." (*Waymire* v. *California Trona Co.*, 176 Cal. 395, 399-400 [168 P. 563].)

"3. Plaintiff is entitled to the custody of both children of the marriage.

"4. Defendant pay to plaintiff for the support and maintenance of JAMES FLOYD ADAMSON the sum of $25.00 per month.

"5. Defendant pay to plaintiff the sum of $25.00 per month for the support and maintenance of the child of the parties to be born approximately August 22, 1961, and that such payments commence on the birth of said child.

"6. Defendant pay to plaintiff for her support and maintenance the sum of $1.00 per month.

"7. Defendant pay for medical, hospital and doctor bills attendant upon the birth of the presently existing but unborn child of the parties.

"8. Plaintiff be restored to her married name of JACQULYNE MAY ADAMSON.

"9. Defendant pay the costs of this action and pay to plaintiff's attorneys . . . the sum of $150.00.

"Let an order modifying the Interlocutory Judgment of Divorce be entered accordingly."

A minute order dated September 11, 1961, indicates that defendant's motion for a new trial was heard and denied on said date.

On September 21, 1961, the written judgment, dated the same day, was filed and entered. It contained the same provisions as set forth in the previously filed conclusions of law.

Defendant filed his notice of appeal on October 9, 1961, whereby he ". . . appeals from the judgment of modification of interlocutory decree of divorce and from the order denying motion for new trial in the above entitled action."

No appeal lies from an order denying a motion for new trial. (*Rodriguez* v. *Barnett,* 51 Cal.2d 154, 156 [338 P.2d 907].)

Defendant contends that the evidence is insufficient to support the finding that he is the father of the child born in December 1959 (i.e., James Floyd Adamson).

The gist of defendant's contention is that plaintiff lied; that she was thoroughly impeached, and that her witnesses were biased.

The transcript discloses that at the conclusion of the hearing the following occurred:

"THE COURT: Well, gentlemen, the case has been well tried, well argued. I am ready to decide the issues.

". .  .  .  .  .  .  .  .  .

"Now, so far as the evidence is concerned, it is simply my

function to sit here and weigh the evidence and determine the probabilities. . . .

"  .   .   .   .   .   .   .   .   .   .   .   .   .

"Now, so far as child No 1, Jimmy, is concerned, we have the testimony of the mother that the defendant here is the father of the child, was conceived by him. We have his denial.

"We have certain supporting testimony on the part of witnesses for the plaintiff and for the defendant, but when you come right down to it, the child was born in lawful wedlock, the admission when the birth certificate was made, the fact that the defendant married the woman when he knew she was in a family way to me are determinative and I will find that he is the father of the child."

■■■■■ Defendant next contends that the issue of paternity of the child (James) born on December 1, 1959, prior to the granting of the interlocutory decree of divorce, is res judicata insofar as plaintiff is concerned. Defendant correctly concedes that it would not be res judicata insofar as the rights of the child are concerned. (*Gonzales* v. *Pacific Greyhound Lines,* 34 Cal.2d 749 [214 P.2d 809].)

As indicated above plaintiff alleged in her complaint for divorce "[t]hat there are no children the issue of said marriage." Defendant, by not answering, in effect admitted that there were no children as the issue of the marriage. At the divorce hearing, as heretofore set forth, plaintiff testified that there were no children the issue of said marriage; and the trial court so found.

There is no doubt that had the plaintiff alleged in her complaint for divorce that there was a child as the issue of the marriage and that she was pregnant with another child at the time of the hearing on the divorce, the trial judge would have had jurisdiction to determine the question of paternity and support and maintenance of such offspring. (*McKee* v. *McKee,* 156 Cal.App.2d 764 [320 P.2d 510] ; *Daniels* v. *Daniels,* 143 Cal.App.2d 430 [300 P.2d 335] ; *Madden* v. *Madden,* 160 Cal. App.2d 422 [325 P.2d 538].)

The meaning of plaintiff's allegation in her complaint to the effect " [t]hat there are no children the issue of said marriage" is plain and unambiguous. She declared under oath at least twice that there were no children of the marriage. It appears obvious that had the wife alleged in her complaint for divorce that there was a child or children of the marriage the husband would have contested the allegation and made an issue of the matter in a trial of the case.

The wife had the full opportunity to litigate the paternity question at the time of the divorce proceedings—she was not in any sense prevented by any acts of the husband from doing what she thought was proper.

The precise and identical question heard in the divorce proceeding with reference to the parentage of any children was again heard in the so-called modification proceedings, namely, whether the husband and wife were the father and mother respectively of any children of the marriage.

There was no appeal taken from the judgment of divorce, there was no motion for a new trial, there was no independent suit in equity brought to set aside the judgment, and there was no proceeding brought under the provisions of section 473, Code of Civil Procedure. There is no contention that there was any extrinsic fraud. Furthermore, it is interesting to note that the wife in this case waited until a few days following the expiration of the six-months' period mentioned in section 473, Code of Civil Procedure, before instituting the motion under consideration. At the oral argument counsel for the wife, with commendable forthrightness, in answer to the question, ". . . what you were attempting to do was to modify the interlocutory to establish the parentage of these children, isn't that correct" answered "That's correct."

A judgment may be attacked in four ways, namely, by a motion for a new trial, by appeal, by motion for relief pursuant to Code of Civil Procedure section 473, or by an independent suit in equity. The court has the inherent power to protect the sanctity of its judgments against extrinsic fraud or to set aside a judgment that is void upon its face. (*Heathman* v. *Vant*, 172 Cal.App.2d 639 [343 P.2d 104].) The rule applies to an interlocutory decree of divorce. (*Suttman* v. *Superior Court*, 174 Cal. 243, 244 [162 P. 1032] ; *Bancroft* v. *Bancroft*, 178 Cal. 367, 368 [173 P. 582] ; *Borg* v. *Borg*, 25 Cal. App.2d 25, 29 [76 P.2d 218] ; *Estate of Hughes*, 80 Cal.App.2d 550, 555 [182 P.2d 253] ; *Deyl* v. *Deyl*, 88 Cal.App.2d 536, 539 [199 P.2d 424].)

The fraud referred to must be extrinsic in character and the judgment will not be set aside because of perjured evidence and particularly so where the perjury involved is that of the petitioner. The rule is the same whether there was a default judgment or a judgment after a contested trial. (*Westphal* v. *Westphal*, 20 Cal.2d 393, 397 [126 P.2d 105] ; *Harvey* v. *Griffiths*, 133 Cal.App. 17, 22-23 [23 P.2d 532] ; *Suttman* v. *Superior Court*, 174 Cal. 243, 244 [162 P. 1032].)

The fact that the wife labeled the petition in this case as one for modification of a judgment cannot operate to give the court jurisdiction if in fact the proceeding was not one for modification but for a retrial of an issue finally determined in the divorce action. The court is not bound by any labels. (*Harrold* v. *Harrold*, 127 Cal.App.2d 582 [274 P.2d 183].)

The interlocutory decree becomes a conclusive adjudication and res judicata with respect to all issues determined therein. (*Leupe* v. *Leupe*, 21 Cal.2d 145, 148 [130 P.2d 697]; see also *DuPont* v. *DePont*, 4 Cal.2d 227, 228 [48 P.2d 677]; *McLaughlin* v. *Superior Court*, 128 Cal.App.2d 62, 66 [274 P.2d 745].)

To approve the contention of the wife in this case we would necessarily be compelled to agree that it was proper to modify a decree with respect to matters and issues therein decided and further, to give tacit approval to the use of perjury and tactics not designed to the proper administration of justice. This we are not prepared to do.

It is to be kept in mind, however, that the children involved here are not foreclosed from instituting an action to have the husband declared to be their father and for an order for support and maintenance. In other words, the doctrine of res judicata cannot be invoked in this case by the husband against the children, even though the children can under the circumstances invoke the doctrine against him. (*Daniels* v. *Daniels, supra,* 143 Cal.App.2d 430, [300 P.2d 335].)

Finally defendant asserts that "it was error to modify the interlocutory decree to award alimony when the divorce complaint did not pray for alimony and when the interlocutory decree did not award alimony."

As previously set forth plaintiff alleged in her complaint for divorce "[t]*hat the parties hereto have settled their community property interests as and between themselves and that it would be fair, just and equitable if defendant were to pay to plaintiff the sum of $50.00 per month for a period of twelve months.*" She prayed "[t]hat defendant be ordered to pay to plaintiff the sum of $50.00 per month for twelve consecutive months." The interlocutory decree ordered that "defendant pay to plaintiff the sum of $50.00 per month for twelve consecutive months."

In plaintiff's affidavit in support of the order to show cause she asserted in part as follows:

"Based upon the foregoing facts I hereby declare that it will be fair, equitable and reasonable to, and I request the court to modify the above-mentioned Order [i.e. interlocutory decree] and make further, different or additional Orders, as follows, to wit: . . . that defendant pay to plaintiff for her support and maintenance the sum of $150.00 per month for a period of six consecutive months, and thereafter pay to plaintiff for her support and maintenance the sum of $50 per month until the death of either party, the remarriage of plaintiff, or further order of this court. . . ."

The reporter's transcript of the hearing on the order to show cause discloses that the trial judge *refused* to award alimony. The transcript provides in part as follows:

"MR. BECKER: Your Honor, there is another point. In our affidavit we have asked for alimony for the wife. The alimony now——

"THE COURT: I am glad you mentioned that because he [i.e. defendant] is loaded all he can be loaded. She has got a capacity to earn her living and right now there is no alimony. *No alimony.*" (Emphasis added.)

The minute order dated July 18, 1961, provides in part that *"defendant pay no alimony to plaintiff."* (Emphasis added.)

However, the findings of fact and conclusions of law subsequently filed on August 31, 1961, set forth that "5. Defendant is able to pay alimony to plaintiff in the amount of $1.00 per month" and the conclusion of law therefrom is that "6. Defendant pay to plaintiff for her support and maintenance the sum of $1.00 per month." The judgment after trial by court filed September 21, 1961, orders in part ". . . that the Interlocutory Judgment of Divorce be modified to provide that:

". . . . . . . . . . . .

"6. Defendant pay to plaintiff for her support and maintenance the sum of $1.00 per month."

With reference to the difference between the order made from the bench by the judge and the order or judgment signed by the judge, counsel for the wife stated at the oral argument that he talked to the judge after the hearing (out of the presence and without the knowledge of counsel for the husband) and asked the judge whether he intended ". . . to make an order that there be no alimony which of course would in that case the court would lose jurisdiction over the alimony . . ." and that the judge said "no, I mean $1.00 alimony . . . ." The clerk was not advised of any such order nor was opposing counsel told of such.

The thrust of defendant's argument is that there was no award of alimony at the time of the interlocutory judgment of divorce (i.e. that the award of $50 per month for 12 consecutive months did not constitute an award of alimony but was in settlement of their property affairs) and therefore the trial court erred in modifying the interlocutory decree to provide for alimony. Defendant relies upon the principle that unless alimony is ordered or reserved for later determination when the interlocutory decree is granted alimony cannot thereafter be awarded. (*Wilson* v. *Superior Court,* 31 Cal.2d 458 [189 P.2d 266]; *McCaleb* v. *McCaleb,* 177 Cal. 147 [169 P. 1023]; 16 Cal.Jur.2d Divorce and Separation, §§ 218, 219, p. 513.)

Plaintiff contends that the award of $50 per month in the interlocutory decree was proper (of which there is no dispute) and then apparently argues that this constituted an award of alimony, that ". . . any name or label given to the payments is not controlling. *Kelley* v. *Kelley* (1957) 151 Cal.App.2d 228, 223 [*sic*] [311 P.2d 90]; *Fox* v. *Fox* (1954) 42 Cal.2d 49, 52, 53 [265 P.2d 881]; *Messenger* v. *Messenger* (1956) 46 Cal.2d 619, 625 [297 P.2d 988]." (Italics shown.)

The defendant's contention must be sustained. Mr. Hammons, the attorney who prepared the original complaint for divorce and conducted the divorce hearing, testified at the hearing on the order to show cause concerning the $50 per month payments as follows:

"Mr. Henson: Q. Mr. Hammons, did you have any discussion with Mr. Adamson concerning this divorce, if you can recall?

". . . . . . . . . . . . .

"A. Only insofar, as I recall, as to the disposition of the Porsche automobile and *that he was to pay her I think $50 a month for a period of a year.*

"Q. *That was by way of property settlement agreement?*

"A. *Yes, it was. . . .*" (Emphasis added.)

The judgment by the trial court did not alter the interlocutory decree of divorce so as to modify defendant's obligation to pay to plaintiff the sum of $50 per month. On the contrary, the so-called modification of the interlocutory decree consisted of adding a provision for the payment of alimony in the sum of $1.00 per month. This would be in addition to the $50 per month obligation. This being true, the $50 per month obligation did not constitute alimony and there being no award of alimony in the interlocutory decree, the court was without jurisdiction to subsequently award alimony. (*Wilson* v. *Supe-*

*rior Court,* 31 Cal.2d 458 [189 P.2d 266] ; *McCaleb* v. *McCaleb,* 177 Cal. 147 [169 P. 1023] ; 16 Cal.Jur.2d, Divorce and Separation, §§ 218, 219, p. 513; 1 California Family Law, Armstrong, pp. 368-371.)

Defendant's appeal from the order denying his motion for a new trial is dismissed.

The order modifying the interlocutory decree of divorce is reversed.

Wood, P. J., and Lillie, J., concurred.

A petition for a rehearing was denied December 12, 1962, and respondent's petition for a hearing by the Supreme Court was denied January 9, 1963.